PEOPLE v MARSHALL

Docket No. 137965. Submitted December 9, 1993, at Lansing. Decided
April 18, 1994, at 9:35 A.M.

Lorenzo W. Marshall was convicted by a jury in the Genesee
Circuit Court, Donald R. Freeman, J., of assault with intent to
commit murder and possession of a firearm during the commis-
sion of a felony. The defendant was sentenced to 80 to 120
years in prison for the assault conviction and two years for the
felony-firearm conviction, and the trial court subsequently de-
nied the defendant's motion for relief from judgment. The
Court of Appeals granted the defendant's delayed application
for leave to appeal.

The Court of Appeals held:

1. The trial court did not err in denying the defendant's
motion to suppress statements he made to the police after his
arrest. The court's finding that the statements were made
voluntarily was not clearly erroneous.

2. The sentence for the assault conviction is proportionate to
the offense and the offender. The defendant's act of shooting an
on-duty police officer who identified himself as such and who
was attempting to make a lawful arrest of another individual is
a sufficient factor not embodied in the sentencing guidelines to
justify the departure from the guidelines' recommended range
of ten to twenty years. The facts of this case particularly
support a severe departure from the guidelines.

Affirmed.

REILLY, J., dissenting in part, stated that the sentence for the
assault conviction is not proportionate and that the case should
be remanded for resentencing.

*Frank J. Kelley,* Attorney General, *Thomas L.
Casey,* Solicitor General, *Robert E. Weiss,* Prose-
cuting Attorney, *Donald A. Kuebler,* Chief, Appel-
late Division, and *Philip C. Elliott,* Deputy Chief
Assistant Prosecuting Attorney, for the people.

*Thomas R. McCombs,* for the defendant.

Before: TAYLOR, P.J., and REILLY and M. J. TAL-
BOT,* JJ.

M. J. TALBOT, J. Defendant appeals pursuant to
an order of this Court granting his delayed appli-
cation for leave to appeal from a May 1, 1991,
Genesee Circuit Court order denying his motion
for relief from judgment. *People v Marshall*, un-
published order of the Court of Appeals, issued
October 9, 1991 (Docket No. 137965).

Defendant's motion for relief from judgment was
designed to gain relief from his jury convictions of
assault with intent to commit murder, MCL
750.83; MSA 28.278, and possession of a firearm
during the commission of a felony, MCL 750.227b;
MSA 28.424(2). Defendant was sentenced to 80 to
120 years in prison for the assault conviction and
the mandatory two-year term for the felony-fire-
arm conviction. On appeal, defendant claims that
the court clearly erred in denying his motion to
suppress certain statements and that his sentence
violates the proportionality standard of *People v
Milbourn*, 435 Mich 630; 461 NW2d 1 (1990). We
disagree and affirm.

Defendant's convictions arise out of his shooting
a Flint police officer in the head.[1] The officer was
in the process of executing an arrest warrant
issued for defendant's brother, Anthony Ray Mar-
shall. Testimony indicated that there were a num-
ber of individuals in the home where the incident
took place, most of whom were related to defen-
dant. The scene can only be described as one
approaching an all-out riot. At the outset, two
officers entered the home to execute the warrant.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] We note that defendant has failed to file the transcripts of the
jury trial with this Court. Accordingly, the following statement of
facts is derived from the transcripts of the preliminary examination
and the suppression hearing.

When they realized that there were a number of people in the home, they called for backup. The officers found Anthony Marshall, informed him that they were police officers, and told him they had a warrant for his arrest.

Anthony Marshall then sat in a chair and told the officers that he would not submit to arrest. The officers implored him to go peacefully, but he continued to resist. At that point, a crowd began to form around the officers and apparently became unruly. One of the officers indicated that a person in the crowd threw a glass plate. The officers handcuffed Anthony Marshall and began to concentrate on keeping the crowd back so they could complete the arrest. Soon thereafter, other Flint police officers arrived. The officers decided that they would have to carry Anthony Marshall out of the house. Just as they attempted to lift Anthony Marshall out of the chair, one of the officers saw a muzzle flash and heard a gun go off. Officer Alvern Lock sustained a gunshot wound to the head.

Defendant apparently ran out the back door of the house, and a chase ensued. In the midst of the chase, defendant discarded the gun later identified as the weapon that fired the bullet that struck Officer Lock. Officer Lock was shot in the right side of the jaw and the bullet traveled through his jaw, lodging in the left part of his jaw, near his cheek. Defendant was apprehended and transported to the police station where several statements were taken. Before the start of trial, defendant moved to suppress all the statements as having been given involuntarily. Following a four-day suppression hearing, the court denied the motion.

Defendant first argues that the court clearly erred in denying his motion to suppress statements he made to the police. Specifically, defen-

dant argues that his deficient intelligence level, physical injuries and exhaustion, ingestion of drugs and alcohol, and exposure to threats of violence at the hands of the police rendered his confessions involuntary. Having conducted an independent review of the record, we disagree.

In evaluating the voluntariness of a confession, this Court is guided by the factors articulated by our Supreme Court in *People v Cipriano,* 431 Mich 315, 334; 429 NW2d 781 (1988). Those factors include

> the age of the accused; his lack of education or his intelligence level; the extent of his previous experience with the police; the repeated and prolonged nature of the questioning; the length of the detention of the accused before he gave the statement in question; the lack of any advice to the accused of his constitutional rights; whether there was an unnecessary delay in bringing him before a magistrate before he gave the confession; whether the accused was injured, intoxicated or drugged, or in ill health when he gave the statement; whether the accused was deprived of food, sleep, or medical attention; whether the accused was physically abused; and whether the suspect was threatened with abuse.

The voluntariness of a confession is a question for the trial court. *People v Etheridge,* 196 Mich App 43, 57; 492 NW2d 490 (1992). In reviewing the court's determination, we examine the entire record and make an independent determination regarding voluntariness. *People v Johnson,* 202 Mich App 281, 287; 508 NW2d 509 (1993). Nonetheless, we defer to the trial court's superior ability to view the evidence and the witnesses and will not disturb the court's findings unless they are clearly erroneous. *Id.* at 288.

In this case, the court conducted an extensive

*Walker*[2] hearing. The court's findings were specific, in-depth, and showed a careful analysis of all the testimony presented. Much of the testimony regarding defendant's intelligence level and his ability to understand his rights was contradictory. The court found that defendant's credibility was suspect and that even his own witnesses admitted that defendant's response to situations that were not beneficial to his interests was to lie. Although it is true that defendant suffered minor injuries during the arrest, the court found that the injuries were mostly the fault of defendant and were not serious enough to adversely affect the voluntariness of his confessions. In cases such as this, where our independent review of the record is in accord, we defer to the trial court.

Defendant also claims that his sentence of 80 to 120 years in prison for the conviction of assault with intent to commit murder is disproportionate to the offense and the offender.[3] The guidelines' range for this particular offense was ten to twenty years. In sentencing defendant and justifying its departure from the guidelines, the court stated:

> The definition of what you've done is so bad and the description so horrendous that it requires a major penalty. This is what the penalty is going to be. I'm not bound by the guidelines. Guidelines say ten to twenty years. That's not enough time. Why? I'm going to explain so that you understand and so that the record is clear. I'm not bound by the guidelines because you shot a defenseless man. I'm

[2] *People v Walker (On Rehearing),* 374 Mich 331; 132 NW2d 87 (1965).

[3] Defendant does not claim that the sentence is one that he is unable to serve. *People v Moore,* 432 Mich 311; 439 NW2d 684 (1989); *People v Rushlow,* 437 Mich 149; 468 NW2d 487 (1991). Even if he were to do so, considering that defendant was twenty-three at the time of sentencing, and considering his ability to earn good-time credits, we believe defendant has a reasonable prospect of actually serving the sentence.

not bound by the guidelines because your shooting of him created an injury that clearly reflects that your intent was to shoot him through the head and that you could easily have caused his death. I'm not bound by the guidelines because the shooting was totally without any instigation. It was not one that should have caused you to react in that way. I'm not bound by the guidelines because the policeman was acting in the line of duty and lawfully so and you had good reason to know that he was and your trying to prevent a man from being arrested under a lawful warrant.

While we agree with defendant that the sentence is severe, we are not persuaded that it is disproportionate to the offense and the offender.

In arriving at this conclusion, we feel compelled to return to the roots of the proportionality standard. In *Milbourn,* our Supreme Court, concluding that because the "shock the conscience" test was "beset with difficulties," turned to the proportionality standard. *Milbourn, supra* at 635-636. The Court concluded that the proportionality standard was superior to the "shock the conscience" test, in part because it was less subjective and would foster sentencing equity. However, the Court recognized that there were circumstances where unique factors not embodied in the guidelines might justify departure from the guidelines without offending the proportionality principle. *Id.* at 660-661.

In this case, we conclude that defendant's act of shooting an on-duty police officer who identified himself as such and who was attempting to make a lawful arrest is a sufficient factor not embodied in the guidelines to justify departure of the magnitude seen here. In so concluding, we quote from Judge CONNOR's recent dissent in *People v Phillips (On Rehearing),* 203 Mich App 287, 292-293; 512 NW2d 62 (1994):

The cold-blooded murder of a man who was
killed because he was a law enforcement officer is
such singularly aberrant behavior that the guide-
lines supply minimal guidance at best, and the
trial court provided ample justification for the
departure. . . . It is the duty of a civilized society
to provide protection for its citizens . . . . In order
to minimize the risk to those who choose this
dangerous profession, strict sentences are war-
ranted for convicted felons who have intentionally
disregarded the status of law enforcement officers,
and the most severe sentences are justified for
those who use fatal force against a police officer
acting in the line of duty.

The facts of the instant case are particularly sup-
portive of a severe departure from the guidelines.

As the trial court so aptly put it, defendant shot
a defenseless police officer who was properly at-
tempting to arrest defendant's brother. Defendant
was fully aware of the fact that these men and
women who were struggling with his brother were
officers of the law armed with a valid arrest war-
rant. Although defendant claims that he did not
intend to shoot the officer, he did shoot with great
accuracy. The evidence indicated that at the time
the shot was fired, there were fifteen people in the
room, most of whom were acting to obstruct the
officers from perfecting the arrest. Defendant's
brother was not more than a few feet from Officer
Lock. We, like the trial court, find it difficult to
imagine that defendant shot this police officer in
the head by accident under these circumstances.
Rather, like the trial court and the jury, we be-
lieve that defendant shot Officer Lock in the head
with the intent to take his life.

We firmly believe that *Milbourn* left to the trial
courts of this state the discretion to fashion a
sentence that is tailored to the *offense* and the

*offender.* This case is not representative of the typical assault with intent to commit murder. In fact, by a stroke of pure luck, this case was literally inches away from being one for first-degree murder. Were we to ignore the fact that the victim in this case was an officer of the law who was performing his statutory and court-ordered obligations, *Milbourn* would be reduced to pure rhetoric. We are persuaded that our Supreme Court contemplated that there were certain offenses and offenders that were not sufficiently represented by the guidelines and that a substantial departure would sometimes be warranted. In our opinion, this is such a case.

Affirmed.

TAYLOR, P.J., concurred.

REILLY, J. *(concurring in part and dissenting in part).* I dissent with respect to the majority's determination that the sentence of 80 to 120 years of imprisonment is proportionate to the offense and the offender. The minimum sentence is four times the guidelines' maximum of twenty years. It will effectively be a far more severe sentence than a life term. While the crime was admittedly horrendous, I cannot agree that a minimum of eighty years for a conviction of assault with intent to commit murder, even when the victim is a police officer, is an appropriate sentence. In *People v Phillips (On Rehearing),* 203 Mich App 287; 512 NW2d 62 (1994), cited by the majority, the majority opinion reversed a sentence of 65 to 150 years of imprisonment for the second-degree murder of a police officer. In this case the minimum sentence imposed is fifteen years more for a lesser crime.

I would remand for resentencing.