PEOPLE v McELHANEY

Docket No. 162330. Submitted November 15, 1995, at Detroit. Decided
January 30, 1996, at 9:05 A.M. Leave to appeal sought.

Randy A. McElhaney was convicted by a jury in the Ionia Circuit
Court, James K. Nichols, J., of three counts of first-degree
criminal sexual conduct and was sentenced to three concurrent
prison terms of thirty to sixty years. The defendant was ac-
cused of driving the victim, a nine-year-old girl, to a wooded
area where he forced the victim to perform various acts involv-
ing sexual penetration. The defendant moved to suppress as
evidence two statements that he had given to police. The first
statement was given by the defendant to the police before his
arrest and was to the effect that he had given a ride to the
victim but that he had done nothing to her. The other state-
ment, which was given to the state police officer who had
administered a polygraph examination that had been requested
by the defendant and came as a result of the officer's expres-
sion of his belief that the defendant had not been truthful
during the polygraph examination, was to the effect that the
defendant had driven the victim to a secluded spot and had
accidentally inserted his finger into her vagina. The trial court
denied the motion to suppress, and the testimony concerning
those statements was admitted at trial. The court also denied
the defendant's motion to suppress the victim's identification of
the defendant at trial. The defendant appealed.

The Court of Appeals *held:*

1. Under the circumstances of this case, including the defend-
ant's request for the polygraph examination, his familiarity
with the criminal justice system, and his admission that he
would have proceeded with the polygraph examination despite
any advice that counsel might have given him, the state police
officer's advising the defendant of his *Miranda* rights was
sufficient to effectuate a voluntary, knowing, and intelligent

REFERENCES

Am Jur 2d, Criminal Law §§ 989, 992.

See ALR Index under Attorney or Assistance of Attorney; Sixth
Amendment.

waiver by the defendant of his Sixth Amendment right to counsel.

2. The trial court's finding that the defendant had been fully apprised of his rights before taking the polygraph examination and had not requested assistance of counsel during the interview is not clearly erroneous. Accordingly, there was no violation of the Fifth Amendment right to counsel, and the trial court did not err in denying the defendant's motion to suppress as evidence testimony concerning the statement the defendant made to the state police officer after the polygraph examination.

3. The trial court's finding that the initial statement that the defendant made to the police had been made before the defendant was a suspect, and, thus, before the defendant was in custody, was not clearly erroneous. Because there was no custodial interrogation, there was no need to advise the defendant of his *Miranda* rights, and the denial of the defendant's motion to suppress testimony concerning that statement was appropriate under the circumstances.

4. The trial court properly permitted the physician's assistant who examined the victim in a hospital emergency room soon after the crime to testify concerning statements made by the victim to her. Because the statements were made in response to questions asked for the purpose of the diagnosis and treatment of the victim and the questions were asked in a manner and under circumstances that were consistent with the child's age and because there was no showing that the child was so immature that her statements might be deemed unreliable and the questions and statements were reasonably necessary for the treatment of the child, the testimony of the physician's assistant, although hearsay, was properly admitted into evidence under the medical treatment and diagnosis exception to the hearsay rule.

5. None of the alleged instances of prosecutorial misconduct denied the defendant a fair and impartial trial.

6. Because the sentences imposed by the trial court were within the range calculated under the sentencing guidelines, they are presumed proportionate. The defendant has failed to present any evidence of unusual circumstances that would overcome the presumption of proportionality.

7. The trial court did not abuse its discretion by permitting the victim to identify the defendant as her assailant. The defendant was represented by counsel at the lineup, and the defendant has failed to show that the lineup was impermissibly suggestive. The fact that the victim's initial identification of the

defendant was tentative did not render her later unequivocal in-court identification of him inadmissible. Because no impropriety was shown with respect to the pretrial identifications, there was no need to establish an independent basis for the in-court identification. In any event, because identification was not at issue by reason of the fact that the defendant admitted that the victim had been in his vehicle, any error relating to the victim's in-court identification of the defendant was harmless.

Affirmed.

CONSTITUTIONAL LAW — RIGHT TO COUNSEL — WAIVER.

A more formal inquiry is required before allowing an accused to waive the constitutional right to counsel for the purpose of trial than is required to waive the right to counsel for the purpose of postindictment questioning (US Const, Am VI; Const 1963, art 1, § 20).

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, *Raymond P. Voet,* Prosecuting Attorney, and *J. Ronald Kaplansky,* Assistant Attorney General, for the people.

State Appellate Defender (by *Norris J. Thomas*) and Randy A. McElhaney, in propria persona.

Before: FITZGERALD, P.J., and WAHLS and M. H. CHERRY,* JJ.

WAHLS, J. Defendant was convicted by a jury of three counts of first-degree criminal sexual conduct, MCL 750.520b(1)(a); MSA 28.788(2)(1)(a). The trial court sentenced defendant to concurrent terms of thirty to sixty years' imprisonment. The jury acquitted defendant of kidnapping. Defendant appeals his convictions as of right. We affirm.

The nine-year-old complainant testified that she rode her bicycle to a party store. Upon leaving the store, she found defendant talking to an unidentified man who had just run over her bike. Defendant offered to give the complainant a ride home,

* Circuit judge, sitting on the Court of Appeals by assignment.

and she accepted. Defendant stopped the car in a wooded area and told the complainant that he had a knife under the seat. According to the complainant, he then forced her to perform fellatio on him. Defendant took the complainant out of the car and penetrated her mouth, vagina, and anus. When defendant went back toward his car, the complainant ran through the woods and reached the home of Crystal Packard. Packard called the complainant's mother and the police.

The complainant was taken to the hospital where she was examined by physician's assistant Karen Bittner. Bittner testified that the complainant's mother was present during the initial part of the interview and that the complainant stated that the man who had given her a ride merely put his hand on her shoulder. When asked if she was hurt anywhere else, the complainant shook her head and hid her face against her mother.

When her mother left the room, the complainant told Bittner about the sexual assault. The complainant told Bittner that her mother had cried enough and that she did not want to make her mother cry any more. Bittner testified that she conducted an examination and found the complainant's vaginal and rectal areas were quite red, swollen, and tender.

The police obtained a search warrant for a "suspect vehicle" parked near defendant's trailer. Belding Police Officer Thomas O'Connor testified that, during a discussion with defendant, defendant admitted that he had given a girl a ride at approximately the same time that the complainant had reported that she was abducted. Upon making this statement, defendant was placed under arrest.

After his arrest, defendant wrote to the trial court and demanded a polygraph examination. Pursuant to his demand, defendant met with

Michigan State Police Sergeant John Palmatier in Lansing, who advised defendant of his *Miranda*[1] rights. Following the examination, Palmatier told defendant that he did not believe that defendant was being truthful. Palmatier asked defendant what really happened. Defendant admitted that he drove the complainant to a secluded spot and "accidentally" inserted his finger into the complainant's vagina.

The trial court denied defendant's motions to suppress his statement to O'Connor during the consensual search of his trailer, his confession to Palmatier after the polygraph examination, and the complainant's in-court identification of him as her attacker. At trial, defendant testified that he gave the complainant a ride, but immediately let her out of the car when she became upset. He denied touching the complainant.

I

Defendant argues that the statements he made following the polygraph examination were taken in violation of his right to counsel. We disagree. This Court reviews a trial court's ruling on a motion to suppress evidence on legal grounds for clear error. *People v Smielewski,* 214 Mich App 55, 62; 542 NW2d 293 (1995). The trial court's findings will not be reversed unless they are clearly erroneous. *People v Haywood,* 209 Mich App 217, 226; 530 NW2d 497 (1995). A finding is clearly erroneous if it leaves this Court with a definite and firm conviction that a mistake has been made. *People v Kvam,* 160 Mich App 189, 196; 408 NW2d 71 (1987).

Once the Sixth Amendment right to counsel has been invoked, any subsequent waiver during a

[1] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

police-initiated custodial interview is ineffective with respect to the formal charges filed against the defendant. *Smielewski, supra,* p 61. However, if an accused chooses to initiate communications, the accused must be sufficiently aware of both his Fifth and Sixth Amendment rights to effectuate a voluntary, knowing, and intelligent waiver of such rights. *Kvam, supra,* p 195.

Here, there is no question that defendant's Sixth Amendment right to counsel had attached by the time that he took the polygraph examination. In addition, it is not disputed that Palmatier advised defendant of his *Miranda* rights. Palmatier testified that he told defendant that although defendant's attorney could not be present in the room during the examination, defendant could stop the questioning at any time to consult with counsel. Before taking the polygraph examination, defendant also signed a written waiver of his right to counsel.

A

The first question is what constitutes an effective waiver of the Sixth Amendment right to counsel when a criminal defendant chooses to initiate communications. The existence of a knowing and intelligent waiver of the Sixth Amendment right to counsel depends upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused. *People v Riley,* 156 Mich App 396, 399; 401 NW2d 875 (1986).

Here, defendant allegedly waived his right to counsel for purposes of the administration of a polygraph examination. We agree with the United States Supreme Court that the role of an attorney during police questioning is relatively limited com-

pared to an attorney's role at trial. *Patterson v Illinois,* 487 US 285, 299; 108 S Ct 2389; 101 L Ed 2d 261 (1988). Accordingly, we adhere to the Court's holding that a more formal inquiry is required before allowing a defendant to waive his right to counsel at trial than is required during postindictment questioning. *Id.*

Second, other circumstances support the effectiveness of defendant's waiver. Defendant was not a stranger to the criminal justice system. Defendant had a lengthy criminal history, having been convicted of at least nine misdemeanors and one felony during the prior ten years. Defendant had had unrelated criminal sexual conduct charges dropped in 1990 after passing a polygraph examination. Also, defendant understood the gravity of his situation. His letter to the trial court requesting the polygraph examination implored, "My life is at stake." Finally, defendant had an opportunity to confer with counsel. His polygraph examination took place more than six weeks after counsel was appointed for him. Indeed, defendant insisted at his *Walker*[2] hearing that he would have proceeded with the polygraph examination despite any advice counsel would have given him. See *Cooley v United States,* 501 F2d 1249, 1250-1251 (CA 9, 1974).

Third, defendant was advised of his *Miranda* rights before undertaking the polygraph examination. The United States Supreme Court has held that *Miranda* warnings are sufficient to ensure that a defendant's waiver of his right to counsel during postindictment questioning is "knowing and intelligent." *Patterson, supra,* pp 298-300.

Since *Patterson* was decided, the Michigan Supreme Court has declined to address this issue. See

[2] *People v Walker (On Rehearing),* 374 Mich 331; 132 NW2d 87 (1965).

*People v Anderson (After Remand),* 446 Mich 392, 403-404; 521 NW2d 538 (1994); *People v Ray,* 431 Mich 260, 274, n 8; 430 NW2d 626 (1988). Importantly, this case is distinguishable from *Anderson, supra.* In *Anderson,* pp 403-404, the defendant requested a polygraph examination *before* he was arraigned and appointed counsel. Here, defendant wrote a letter to the trial court demanding that he be allowed to take a polygraph examination *after* his Sixth Amendment rights had attached and *after* he had invoked this right. In addition, *People v Bladel (After Remand),* 421 Mich 39, 66; 365 NW2d 56 (1984), aff'd sub nom *Michigan v Jackson,* 475 US 625; 106 S Ct 1404; 89 L Ed 2d 631 (1986), did not address the issue whether *Miranda* warnings would constitute a voluntary, knowing, and intelligent waiver when it is the accused who initiates the communication.

However, the Michigan Supreme Court has stated that where the United States and Michigan Constitutions contain virtually identical provisions, as is the case when the Sixth Amendment of the United States Constitution is compared to Const 1963, art 1, § 20, federal construction of the constitution should be followed absent compelling reasons for an expansive interpretation of the state constitution. *People v Stanaway,* 446 Mich 643, 649, n 1; 521 NW2d 557 (1994). We cannot find compelling reasons to depart from *Patterson, supra,* and adopt its reasoning. We specifically decline to adopt the suggestion in *United States v Mohabir,* 624 F2d 1140, 1149, 1153 (CA 2, 1980), that would require that a judicial officer inform an accused of "the gravity of his legal position" and "the urgency of his need for a lawyer's assistance." See *Patterson, supra,* p 295, n 8.

We hold that under the circumstances of this case, the advisement of *Miranda* rights was suffi-

cient to effectuate a voluntary, knowing, and intelligent waiver of defendant's Sixth Amendment right to counsel. *Bladel, supra,* p 66; *Kvam, supra,* p 195.

B

Defendant also argues that admission of the statements violated his Fifth Amendment right to counsel. Even though his Sixth Amendment right to counsel had attached, in order for defendant's Fifth Amendment right to counsel to attach, defendant specifically had to request counsel for subsequent custodial interrogations. *Bladel, supra,* p 53.

Here, defendant argues that the police denied his request to consult with counsel during the postpolygraph examination. However, Palmatier testified that he told defendant that defendant did not have to answer any questions and could stop the interview at any time. Palmatier also testified that defendant never requested the assistance of counsel during the interview. Furthermore, defendant knowingly and voluntarily waived his *Miranda* rights before making his statements. In denying defendant's motion to suppress, the trial court found that the version of events presented by Palmatier at the *Walker* hearing was more credible than that presented by defendant. Our independent review of the record does not disclose that this finding was clearly erroneous.[3] *Bladel, supra,* p 53; *People v Marshall,* 204 Mich App 584, 587; 517 NW2d 554 (1994). Accordingly, defendant effectively waived his Fifth Amendment right to

---

[3] We defer to the trial court even though this Court has previously found that Palmatier has used questionable interrogation techniques. See *People v DeLisle,* 183 Mich App 713, 719-720; 455 NW2d 401 (1990).

counsel. *Bladel, supra,* p 53; *Marshall, supra,* p 588.

C

The final question is whether defendant subsequently invoked either his Fifth Amendment or his Sixth Amendment right to counsel after he had waived those rights. Once again, we defer to the trial court's superior ability to view the evidence and the witnesses and we elect not to disturb the trial court's determination of credibility with regard to this issue. *Marshall, supra,* p 588.

The trial court did not clearly err in denying defendant's motion to suppress testimony of statements that defendant made after his polygraph examination.

II

Defendant challenges the trial court's decision to admit into evidence statements he made in his trailer, arguing that he was in custody when he made these statements. We disagree. *Miranda* warnings are required only when a person is subjected to custodial interrogation. *People v Anderson,* 209 Mich App 527, 532; 531 NW2d 780 (1995). A person is in custody when deprived of freedom of action in a significant manner. *People v Hill,* 429 Mich 382, 399; 415 NW2d 193 (1987); *Anderson, supra,* p 532. The key question is whether the accused reasonably could have believed that the accused was not free to leave. *People v Mayes (After Remand),* 202 Mich App 181, 190; 508 NW2d 161 (1993).

Here, police officers were executing a search warrant of a vehicle parked outside defendant's trailer when defendant and his wife opened their

door and identified themselves. At this point, O'Connor had no arrest warrant and no particular suspect in mind. O'Connor did not consider defendant to be a suspect, but rather considered him as a possible witness to something involving the suspect vehicle. Before they spoke, O'Connor assured defendant that he was not under arrest.

During the conversation, defendant appeared "casual" and "cooperative" to O'Connor. At one point, defendant walked to the kitchen to search for a check stub that would corroborate his story. O'Connor testified that he would not allow a person in his custody such freedom of movement. O'Connor was in defendant's trailer for half an hour and would have left sooner if defendant had declined to speak with him. Belding Police Officer Dave Thomas confirmed O'Connor's testimony that defendant was not a suspect before this conversation. The trial court's finding that defendant was not in custody during the discussion at his trailer was not clearly erroneous. See *Hill, supra,* pp 399-400.

In addition, for purposes of *Miranda,* interrogation means express questioning, or any words or actions on the part of the police, that the police should know is reasonably likely to elicit an incriminating response from the suspect. *Anderson, supra,* pp 532-533. Here, the questions posed by O'Connor were general in nature and not designed to elicit an incriminating response from defendant. See *id.*

The trial court did not abuse its discretion in admitting the statements that defendant made in his trailer to O'Connor.

### III

Defendant argues that the trial court abused its

discretion in allowing Bittner to testify concerning the statements that the complainant made to her. We disagree. The decision to admit evidence will not be reversed absent an abuse of discretion by the trial court. *People v Coleman,* 210 Mich App 1, 4; 532 NW2d 885 (1995).

Although hearsay is generally not admissible, there is an exception for statements made for purposes of medical treatment or medical diagnosis in connection with treatment. MRE 803(4); *People v Meeboer (After Remand),* 439 Mich 310, 322; 484 NW2d 621 (1992). Under MRE 803(4), the declarant must have the self-interested motivation to speak the truth to treating physicians in order to receive proper medical care, and the statement must be reasonably necessary to the diagnosis and treatment of the patient. *Id.*

A

In *Meeboer,* our Supreme Court recognized that complainants of "tender years" may not have the same understanding of the need to tell the truth to medical professionals that adults do. *Id.,* p 323; *People v Hyland,* 212 Mich App 701, 704-705; 538 NW2d 465 (1995). The Supreme Court therefore adopted a ten-factor test for establishing the trustworthiness of a young declarant's statement. *Meeboer, supra,* pp 324-325; *Hyland, supra,* p 705.

The first factor is the age and maturity of the declarant. *Meeboer, supra,* p 324; *Hyland, supra,* p 705. The complainant was nine years old at the time she told Bittner of her ordeal. Children over the age of ten are presumed to be reliable. *Hyland, supra,* p 705. Lacking any evidence that this nine-year-old was immature, we will weigh her age and maturity in her favor. *Id.*

The second factor is the manner in which the

statements were elicited. *Meeboer, supra,* pp 324-325; *Hyland, supra,* p 705. Bittner testified that she asked the complainant if she had been injured or if she hurt anywhere. In response to these neutral questions, the complainant initially shook her head and hid her face. When the complainant's mother left the room, Bittner asked, "Are you sure you're not hurt anyplace? You know, I just want to make sure nothing bad happened." We find that the complainant's statements were not elicited in a manner that would undermine their credibility. See *id.,* p 705.

The third and fourth factors for the trial court to consider are the manner in which the statements are phrased and the use of terminology unexpected in a child of similar years. *Meeboer, supra,* p 325; *Hyland, supra,* p 705. The complainant's use of the words "front" and "bottom" were not scientifically complex and do not indicate that her statements were influenced by an adult. *Id.,* p 705.

The fifth factor involves the reason for the examination. *Meeboer, supra,* p 325; *Hyland, supra,* pp 705-706. If the prosecutor scheduled the medical examination, it might indicate that the examination was not for the purposes of medical treatment. *Meeboer, supra,* p 325; *Hyland, supra,* p 706. The complainant's mother testified that she brought the complainant to the hospital emergency room "to see if she had been injured." In addition, Bittner relied on the complainant's statements to direct Bittner's treatment. We find that the examination was for purposes of medical treatment.

The sixth and seventh factors involve the timing of the examination in relation to the abuse and to the trial. *Meeboer, supra,* p 325; *Hyland, supra,* p 706. The complainant was brought to the hospital

within hours of the assault and before any suspect had been identified. The timing of the examination supports the statements' trustworthiness.

The eighth factor is the type of examination. *Meeboer, supra,* p 325; *Hyland, supra,* p 706. Statements made in the course of treatment for psychological disorders may not be reliable. *Meeboer, supra,* p 325; *Hyland, supra,* p 706. A physical examination in a hospital's emergency room provides no indicia of unworthiness.

The ninth factor involves the relation of the declarant to the person identified. *Meeboer, supra,* p 325; *Hyland, supra,* p 707. Because the complainant did not identify her assailant in these statements, this factor is not applicable.

The tenth factor is the existence of a motive to fabricate. *Meeboer, supra,* p 325; *Hyland, supra,* p 707. Defendant has not provided any evidence of a motive to fabricate.

In addition to the ten-factor test, the reliability of the hearsay is strengthened when it is supported by other evidence, including the resulting diagnosis and treatment. *Meeboer, supra,* pp 325-326. Here, the physical examination's findings—there were numerous abrasions and the complainant's vaginal and rectal areas were red, swollen, and tender—corroborated the complainant's account of what happened. Every applicable factor listed under *Meeboer* and *Hyland* strengthens the trustworthiness of the complainant's statements to Bittner.

B

Defendant also argues that the statements were not reasonably necessary to the diagnosis and treatment of the complainant. However, we find that the complainant's statements allowed Bittner

to structure the examination and questions to the exact type of trauma that the complainant had recently experienced. *Meeboer, supra,* p 329. Sexual abuse cases involve medical, physical, developmental, and psychological components, all of which require diagnosis and treatment. *Id.*

We hold that the trial court did not abuse its discretion in allowing Bittner to testify concerning the statements that the complainant made to her. *Meeboer, supra,* pp 325, 329; *Hyland, supra,* p 707. In any case, the statements were cumulative to the complainant's testimony and, therefore, harmless. *People v Van Tassel (On Remand),* 197 Mich App 653, 655; 496 NW2d 388 (1992).

IV

Defendant argues that he was denied due process and a fair trial by repeated acts of prosecutorial misconduct. We disagree. Appellate review of improper prosecutorial remarks is generally precluded absent objection by counsel, because the trial court is otherwise deprived of an opportunity to cure the error. *People v Stanaway,* 446 Mich 643, 687; 521 NW2d 557 (1994). An exception exists if a curative instruction could not have eliminated the prejudicial effect or where failure to consider the issue would result in a miscarriage of justice. *Id.*

Prosecutorial misconduct issues are reviewed case by case. *People v Allen,* 201 Mich App 98, 104; 505 NW2d 869 (1993). On review, this Court must examine the pertinent portion of the record and evaluate a prosecutor's remarks in context. *People v LeGrone,* 205 Mich App 77, 82-83; 517 NW2d 270 (1994). The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial. *Allen, supra,* p 104.

A

Defendant argues that the prosecutor improperly vouched for the complainant's credibility. However, the mere statement of the prosecutor's belief in the honesty of the complainant's testimony did not constitute error requiring reversal because, as a whole, the remarks were fair. *People v Rosales*, 160 Mich App 304, 309; 408 NW2d 140 (1987). In any case, a prompt admonishment to the jury regarding its role as factfinder would have cured any error. *Stanaway, supra*, p 687.

B

The prosecutor properly commented concerning the time frame during which the offenses occurred. The prosecution is free to comment with respect to the evidence and all reasonable inferences that may be drawn from the evidence as it relates to its theory of the case. *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995). In addition, the comment properly responded to the defense's argument that defendant did not have time to commit these offenses. *People v Vaughn*, 200 Mich App 32, 39; 504 NW2d 2 (1993).

Assuming arguendo that the prosecutor should not have commented regarding his personal style of running errands, any error could have been cured with a timely instruction. *Stanaway, supra*, p 687. In any case, the jury was repeatedly told that the comments of counsel were not evidence and that in deciding which witnesses to believe, they were to rely on their own common sense and everyday experience. See *People v Lawton*, 196 Mich App 341, 355; 492 NW2d 810 (1992). This comment did not deprive defendant of his right to a fair and impartial trial. *Allen, supra*, p 104.

C

Defendant argues that the prosecutor improperly denigrated defense counsel and defendant. However, the prosecutor permissibly responded to defense counsel's suggestion that a paper towel that was discovered near the scene of the crime was exculpatory evidence. *Vaughn, supra,* p 39.

In addition, the remarks concerning defendant were permissible. The prosecutor did not argue that defendant's bad character or prior bad conduct made it more likely that he committed these crimes. See *People v Quinn,* 194 Mich App 250, 253; 486 NW2d 139 (1992); *People v Fredericks,* 125 Mich App 114, 118; 335 NW2d 919 (1983); *People v Williams,* 57 Mich App 521, 523, n 1; 226 NW2d 547 (1975). Rather, the prosecutor's remarks merely suggested that because defendant committed *these* crimes, not other crimes or bad acts, he was a "monster." In addition, the prosecutor suggested that it was possible for a man to commit a heinous crime and then continue with his life as if nothing out of the ordinary had happened. These remarks permissibly commented on the evidence. *Bahoda, supra,* p 282.

D

Finally, defendant argues that the cumulative effect of the improper remarks requires reversal. We disagree. We do not believe that the cumulative effect of the prosecutor's comments deprived defendant of a fair and impartial trial. *Allen, supra,* p 104.

V

Defendant argues that his sentence was disproportionate. We disagree. Defendant's sentence was

within the guidelines and is presumed proportionate. *People v Cotton,* 209 Mich App 82, 85; 530 NW2d 495 (1995). Defendant has failed to present any evidence of unusual circumstances such as would overcome the presumption of proportionality. *Id.* After reviewing the record and the heinous nature of the circumstances surrounding these offenses, we find this argument ridiculous. Defendant's sentence was proportionate to the seriousness of the matter. *People v Houston,* 448 Mich 312, 319; 532 NW2d 508 (1995).

VI

Finally, defendant argues in propria persona that he was denied his right to due process and a fair trial when the trial court admitted identification evidence without an independent basis and when the identification was tainted from unduly suggestive pretrial procedures. We disagree. A trial court's decision to admit identification evidence will not be reversed on appeal unless it was clearly erroneous. *People v Barclay,* 208 Mich App 670, 675; 528 NW2d 842 (1995). A decision is clearly erroneous when the reviewing court is left with a definite and firm conviction that a mistake has been made. *Id.*

The need to establish an independent basis for an in-court identification arises where the pretrial identification is tainted by improper procedure or is unduly suggestive. *Id.* Here, the complainant identified defendant both in a lineup and at defendant's preliminary examination.

With respect to the identification at the lineup, defendant was represented at the lineup by counsel and bears the burden of showing that the lineup was impermissibly suggestive. *People v Benson,* 180 Mich App 433, 438; 447 NW2d 755 (1989),

rev'd in part on other grounds 434 Mich 903 (1990); *People v Barnes,* 107 Mich App 386, 389; 310 NW2d 5 (1981). There is no evidence that the complainant was told that the perpetrator was in the lineup. In any case, this fact alone would not render the lineup unduly suggestive. *People v Larry,* 162 Mich App 142, 155; 412 NW2d 674 (1987).

With respect to the allegedly improper "process of elimination," it was the complainant herself who decided to pick out the culprit through that method. The fact that the complainant's initial identification of defendant was tentative does not render her unequivocal identification at trial inadmissible. *Barclay, supra,* p 676. Rather, this was a credibility issue that was properly before the jury to determine. *Id.* Defendant has failed to sustain his burden of showing that the pretrial lineup was unduly suggestive. *Benson, supra,* p 438.

The complainant's identification of defendant at the preliminary hearing was also proper. The complainant testified that she looked at defendant long enough to determine that he was the man who abducted and sexually assaulted her. During the day of the attack, the complainant had more than an ample opportunity to observe her attacker. Defendant's preliminary examination took place only two months after the attack. Having reviewed the totality of the circumstances, *People v Solomon,* 47 Mich App 208, 216, 218-219; 209 NW2d 257 (1973) (dissent of LESINSKI, C.J.), adopted 391 Mich 767 (1974); *People v Johnson,* 58 Mich App 347, 353; 227 NW2d 337 (1975), we find that defendant's right to due process was not violated by the complainant's identification of him at the preliminary examination. See *People v Petrella,* 124 Mich App 745, 756; 336 NW2d 761 (1983), aff'd 424 Mich 221; 380 NW2d 11 (1985).

Because there was no impropriety in the complainant's pretrial identifications of defendant, there was no need to establish an independent basis for an identification. *People v Miller,* 208 Mich App 495, 505; 528 NW2d 819 (1995). In any case, identification was not at issue, because defendant admitted that he was the man who put the complainant's bike in the trunk of his car and started to drive her home. Accordingly, even if the complainant's in-court identification of defendant was erroneous, it was harmless beyond a reasonable doubt. *People v Hampton,* 138 Mich App 235, 239; 361 NW2d 3 (1984).

The trial court did not clearly err in admitting the identification evidence.

Affirmed.