# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

v

BRANDON JACOB MILLAY,

    Defendant-Appellant.

UNPUBLISHED
October 15, 2015

No. 322616
Genesee Circuit Court
LC No. 13-033113-FC

Before: GLEICHER, P.J., and SAWYER and MURPHY, JJ.

PER CURIAM.

Defendant appeals his convictions, following a jury trial, of two counts of second-degree criminal sexual conduct, victim under 13 years of age (CSC II), MCL 750.520c(1)(a), one count of first-degree criminal sexual conduct, victim under 13 years of age (CSC I), MCL 750.520b(1)(a), and one count of aggravated indecent exposure, MCL 750.335a(2)(b). The trial court sentenced defendant as a fourth habitual offender, MCL 769.12 to serve concurrent terms of 228 to 500 months for one CSC II conviction, 228 to 400 months for the second CSC II conviction, 360 months to 600 years for the CSC I conviction, and 46 to 180 months for the aggravated indecent exposure conviction. Defendant appeals as of right and we affirm.

Defendant first argues that his trial counsel provided ineffective assistance in failing to object to admission of a police interview with defendant that was not recorded, and by failing to request an instruction to the jury regarding the unrecorded interview. This issue was not raised below. Claims of ineffective assistance of counsel that are unpreserved are limited to review for errors apparent on the record. *People v Unger* (*On Remand*), 278 Mich App 210, 253; 749 NW2d 272 (2008). The constitutional question whether an attorney's ineffective assistance deprived a defendant of his Sixth Amendment[1] right to counsel is reviewed de novo. *Id.* at 242. Whether the statute regarding recording of interviews was in effect or required an instruction would be preliminary questions of law subject to de novo review. *People v Dobek*, 274 Mich App 58, 93; 732 NW2d 546 (2007).

---

[1] US Const, Am VI.

According to MCL 763.8(2), a law enforcement official must record interviews of those who are interviewed while in custodial detention for their involvement in major felonies. There was no dispute that law enforcement interviewed defendant on May 17, 2013, while he was in custodial detention, regarding his involvement in a major felony. Thus, if the statute was operational, law enforcement would have been required to record the interview and if it did not do so, the jury would had to have been informed that the requirement for taping was not met and it could therefore consider the failure to record the interview in evaluating the evidence. MCL 763.9.

However, the statute was not operational at the time defendant was interviewed by police. The statute became effective on March 28, 2013, prior to the interview, but the clear language of the statute provided that law enforcement officials were not required to comply with MCL 763.8(2) until a later time, depending on the ability of law enforcement to comply with the recording requirements. Specifically, if the law enforcement agency had equipment that met the standard, it was not required to comply with the statute until 60 days after the standards were set, and if the law enforcement agency did not have the equipment, it had until 60 days after receiving equipment that met the commission's standards. MCL 763.11(4). Additionally, the statute gave a law enforcement agency 120 days to implement the recording requirements once it acquired recording equipment that complied with the standards or once it received funds for compliant recording equipment. MCL 763.11(4).

There was no evidence on the record regarding the date that the commission published the standards. Regardless, because police interviewed defendant within two months of the effective date of the statute, it could not have been required to comply with the statute even if the standards were adopted the day that the statute became effective. Counsel cannot be deemed ineffective for failing to make a futile objection, *In re Archer*, 277 Mich App 71, 84; 744 NW2d 1 (2007), or for failing to request an instruction that was not warranted.

Next, defendant argues that the trial court erred in admitting defendant's statement to police that he penetrated complainant with his finger because, he maintains, there was no corroborating evidence since complainant denied that defendant penetrated her body with his finger. The general rule is that the *corpus delicti* of a crime must be established by evidence other than a confession or admission of the accused. *People v Hamp*, 110 Mich App 92, 96; 312 NW2d 175 (1981); *People v McMahan*, 451 Mich 543, 548; 548 NW2d 199 (1996). This Court reviews a lower court's decision regarding the *corpus delicti* requirement for an abuse of discretion. *People v Burns*, 250 Mich App 436, 438; 647 NW2d 515 (2002). The trial court does not abuse its discretion when it chooses an outcome within the range of reasonable and principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).

The *corpus delicti* rule requires that a preponderance of direct or circumstantial evidence, independent of a defendant's inculpatory statement, establish the occurrence of a specific injury and criminal agency as the source of the injury before such statements may be admitted as evidence. *Burns*, 250 Mich App at 438; *People v Cotton*, 191 Mich App 377, 394; 478 NW2d 681 (1991), citing *People v Williams*, 422 Mich 381, 391-392; 373 NW2d 567 (1985). The *corpus delicti* rule is designed to prevent the use of a defendant's confession to convict him of a crime that did not occur. *People v Konrad*, 449 Mich 263, 269; 536 NW2d 517 (1995). However, the rule does not require "independent proof of each and every element of the

particular grade" of crime charged as a condition to admit a defendant's confession. *Williams*, 422 Mich at 391. Rather, plaintiff was required to demonstrate that complainant was sexually assaulted and that a criminal act was the source of the assault. *People v Hayden*, 205 Mich App 412, 413-414; 522 NW2d 336 (1994); *Cotton*, 191 Mich App at 394; *Williams*, 422 Mich at 391-392. The purpose of the *corpus delicti* rule—preventing confessions to a crime that never occurred—is fulfilled by establishing that a criminal sexual assault occurred and that the defendant was involved before hearing the defendant's statement. *Cotton*, 191 Mich App at 387; *Williams*, 422 Mich at 391. Once the *corpus delicti* is established, a defendant's incriminating statement "may be used to elevate the crime to one of a higher degree or to establish aggravating circumstances." *Cotton*, 191 Mich App at 389; *Williams*, 422 Mich at 391-392.

Here, complainant testified that defendant sexually assaulted her three times a week for four years. Although complainant said that the touching was not on the inside of her "private part" she described the touching as feeling like a rock both inside and outside of her "private parts," and, most significantly, complainant recalled defendant inserting a finger into her "butt."

Thus, plaintiff demonstrated that complainant was sexually assaulted and that defendant's criminal behavior was the cause of the sexual assault. This was sufficient to establish the *corpus delicti* standard and allow consideration of defendant's statement to police. The trial court did not abuse its discretion in denying defendant's motion to suppress the statement to police based on the *corpus delicti* requirement.

Lastly, defendant argues that the trial court erred in admitting hearsay testimony by a nurse, Deborah Freeman, who related complainant's statements that she had been sexually assaulted by defendant. A trial court's decision on an evidentiary issue will be reversed on appeal only when there has been a clear abuse of discretion. *People v Holtzman*, 234 Mich App 166, 190; 593 NW2d 617 (1999).

Hearsay is generally not admissible unless it meets the requirements of one of the hearsay exceptions set forth in the Michigan Rules of Evidence. MRE 802; *People v Stamper*, 480 Mich 1, 3; 742 NW2d 607 (2007). However, statements made for the purpose of medical treatment and diagnosis are admissible as an exception to the hearsay rule as provided in MRE 803(4). "Under MRE 803(4), the declarant must have the self-interested motivation to speak the truth to treating physicians in order to receive proper medical care, and the statement must be reasonably necessary to the diagnosis and treatment of the patient." *People v McElhaney*, 215 Mich App 269, 280; 545 NW2d 18 (1996), citing *People v Meeboer (After Remand)*, 439 Mich 310, 322; 484 NW2d 621 (1992). The following questions are considered in order to evaluate whether a statement should be admitted: "(1) Is the content of the statement of the qualified nature, i.e., one of medical history, or of past or present symptoms, pain, or sensations, or of the inception or general character of the cause or external source thereof? (2) Did the declarant make the statement for the purpose of medical treatment or medical diagnosis in connection with medical treatment? (3) Does the information meet the objective medical test of being reasonably necessary to medical diagnosis and treatment?" *People v Kosters*, 175 Mich App 748, 770; 438 NW2d 651 (1989).

Freeman noted that complainant presented to the emergency room as a possible sexual assault case and for vaginal discharge. Freeman was the nurse in the emergency department

responsible for a nursing assessment, for determining what treatments complainant required, and for relating the findings to the emergency room physician. Freeman stated that she questioned complainant for the purposes of medical diagnosis and treatment, and that complainant told her that it burned and felt funny when she urinated. Freeman reported that complainant said defendant had been touching her privates for four years and gestured that he used his fingers. Freeman asked complainant to provide a urine sample for analysis, and assisted a physician in examining complainant's genitals.

Complainant's statements to Freeman were made in the course of investigating and examining the primary complaints that precipitated complainant's visit to the emergency room, concerns about genital discharge and reports of sexual abuse. During the examination, Freeman discovered further symptoms and investigated possible causes. Complainant's inculpatory statement about defendant provided information on a possible cause of her injury and a condition that required treatment intervention. Cases of sexual assault can include injuries that are not readily apparent, like sexually transmitted diseases or emotional injury, and "a victim's complete history and a recitation of the totality of the circumstances of the assault are properly considered to be statements made for medical treatment." *People v Mahone*, 294 Mich App 208, 214-215; 816 NW2d 436 (2011), citing *People v Garland,* 286 Mich App 1, 8–10; 777 NW2d 732 (2009); *McElhaney,* 215 Mich App at 282–283. Freeman provided treatment that corresponded with information gained during her examination. Thus, the trial court properly determined that Freeman's testimony about complainant's statement satisfied an exception to the hearsay rule according to MRE 803(4).

Defendant also argues that the eight-year-old complainant's statements to Freeman should not have been admitted because they were not reliable. In *Meeboer*, 439 Mich at 323, the Court stated that "further analysis of the circumstances surrounding the examination of a child is necessary to determine whether the child understood the need to be truthful to the physician." The court listed the following factors for consideration in making a determination regarding the reliability of the statement of a child:

> (1) the age and maturity of the declarant, (2) the manner in which the statements are elicited (leading questions may undermine the trustworthiness of a statement), (3) the manner in which the statements are phrased (childlike terminology may be evidence of genuineness), (4) use of terminology unexpected of a child of similar age, (5) who initiated the examination (prosecutorial initiation may indicate that the examination was not intended for purposes of medical diagnosis and treatment), (6) the timing of the examination in relation to the assault (the child is still suffering pain and distress), (7) the timing of the examination in relation to the trial (involving the purpose of the examination), (8) the type of examination (statements made in the course of treatment for psychological disorders may not be as reliable), (9) the relation of the declarant to the person identified (evidence that the child did not mistake the identity), and (10) the existence of or lack of motive to fabricate. [*Id*. at 324-325.]

The Court also included other factors that could demonstrate the reliability of a statement made for the purpose of receiving medical care, such as: corroborating physical evidence of the assault,

evidence that the person identified as the assailant had the opportunity to commit the assault, and the resulting diagnosis and treatment. *Id*. at 325-326.

Defendant argues that the trial court should have considered that the complainant's mother spanked her the day prior to the emergency room visit in order to encourage her to disclose the abuse, and that the mother was present at the emergency room. However, the complainant's mother stated that she spanked complainant to encourage her to talk about why she was suddenly wetting her pants at school on four consecutive days and to explain why she had blood in her underwear. There was no evidence that the complainant's mother encouraged complainant to say she was molested. On the contrary, Freeman described the complainant's mother as uncharacteristically frustrated that she was at the hospital and noticed that she was not comforting complainant. Additionally, Freeman removed the complainant's mother from the room before examining her.

Complainant was initially reserved and Freeman built rapport by talking about a common school interest, the cardinal code, which included being reliable and truthful. Freeman stated that she let complainant guide the conversation but asked if someone touched her. Freeman stated that complainant began crying when she disclosed the abuse. Further, complainant exhibited physical symptoms that may have been consistent with sexual abuse such as wetting her pants, vaginal discharge, urinary pain, and swollen labia minora. The hospital performed urinalysis to rule out infection.

Although complainant could not recall when the abuse last occurred, it was brought out that the abuse was discussed in a meeting of the complainant's family members prior to presenting at the emergency room. There was no evidence of inconsistent statements or a motive to fabricate allegations. Thus, the circumstances indicate that the statement was a reliable report of the complainant's medical condition for which she was seeking treatment. The trial court did not abuse its discretion in admitting the testimony as an exception to the hearsay rule.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ David H. Sawyer
/s/ William B. Murphy