# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

DORIAN WILLIE WALKER,

Defendant-Appellant.

UNPUBLISHED
October 18, 2016

No. 327733
Wayne Circuit Court
LC No. 14-011073-01-FC

Before: SAAD, P.J., and JANSEN and M. J. KELLY, JJ.

PER CURIAM.

Following a jury trial, defendant was convicted of first-degree murder, MCL 750.316, and possession of a firearm during the commission a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant to life in prison without parole for the murder conviction, which was consecutive to a two-year prison term for the felony-firearm conviction. Defendant appeals, and for the reasons provided below, we affirm.

This case arises out of the murder of David Windon. After finishing his work shift at a Family Dollar store, Windon was shot several times while in his car in the store's parking lot. In addition to cell phone tower data that placed defendant's phone near the Family Dollar store at the time of the murder, defendant's car was found nearby as well. Further, Andrea Jackson, who was leaving the parking lot at the time of the shooting, identified defendant as the man who walked near her car immediately before the shooting and the man who was standing at the end of Windon's car immediately after the shooting.

Defendant claims on appeal that the trial court erred when it admitted Andrea Jackson's identification of defendant and that his trial counsel provided ineffective assistance by failing to object to the identification testimony and by failing to present certain witnesses.

## I. IDENTIFICATION TESTIMONY

Defendant argues that his due process rights were violated when the trial court admitted evidence of Andrea Jackson's identifications of defendant in court and in a corporeal lineup because they were unduly suggestive. We review this unpreserved constitutional issue for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 764; 597 NW2d 130 (1999).

-1-

A defendant's due process rights are violated by the use of an unduly suggestive identification procedure. *People v Kurylczyk*, 443 Mich 289, 302; 505 NW2d 528 (1993), citing *Stovall v Denno*, 388 US 293, 302; 87 S Ct 1967; 18 L Ed 2d 1199 (1967). A procedure of lineup or photographic identification is unduly suggestive in violation of due process guarantees where it produces "a substantial likelihood of misidentification." *People v McDade*, 301 Mich App 343, 357; 836 NW2d 266 (2013), citing *People v Gray*, 457 Mich 107, 111; 577 NW2d 92 (1998). "[T]he totality of the circumstances" is examined in determining whether a corporeal lineup procedure was unduly suggestive. *Kurylczyk*, 443 Mich at 311-312.

Jackson had described the perpetrator as a light brown African-American, with a small or medium build and a mustache who was between 20 and 25 years old, five feet six inches tall, and between 150 to 175 pounds. She said he was wearing a gray hooded sweatshirt with the hood up and black pants, and was walking with his eyes closed and head down, so she could not see the bottom part of his face. She was not able to identify a perpetrator from a photo array of six individuals shown to her one or two days after the shooting. Also, she could not initially identify the perpetrator from a live lineup of five men on the following day. However, when she asked the police to have the men in the lineup close their eyes, lower their heads, and put their hands in their pockets to mimic what she had seen at the Family Dollar store, she identified defendant.

The burden of demonstrating that a procedure used in a lineup was impermissibly suggestive lies with the defendant. *People v McElhaney*, 215 Mich App 269, 286; 545 NW2d 18 (1996). More than showing that a procedure is just suggestive, a defendant's burden is to demonstrate that the lineup was unduly suggestive to the extent "that it led to a substantial likelihood of misidentification." *Kurylczyk*, 443 Mich at 302, 306. Factors that a court should consider to determine the "likelihood of misidentification" include

> "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." [*Id.* at 306, quoting *Neil v Biggers*, 409 US 188, 199-200; 93 S Ct 375; 34 L Ed 2d 401 (1972).]

There is a substantial likelihood of misidentification in a lineup where differences between the participants "are apparent to the witness and substantially distinguish defendant from the other participants" so that those differences provide the basis for identification, rather than a recognition of the defendant. *People v Henry (After Remand)*, 305 Mich App 127, 161; 854 NW2d 114 (2014) (quotation marks and citation omitted). A lineup is not unduly suggestive where a "defendant's appearance was substantially similar to that of the other participants." *McDade*, 301 Mich App at 358.

Defendant mentions two factors that, he believes, rendered Jackson's identification unduly suggestive. One was that she knew defendant from a previous encounter, and the second was that she was unable to identify him until the corporeal lineup participants were asked to bow their heads. Jackson said she met defendant once, five or ten years earlier at his first wife's baby shower. Defendant argues that the previous interaction could have been the basis for her recognition of him at the lineup. However, she did not state to anyone who was investigating or

who was a witness to the crime that she recognized defendant as a person she had previously known. Additionally, as defendant acknowledges, she was unable to recognize defendant in a photo lineup. Moreover, she did not recognize him in the corporeal lineup until he mimicked the behavior of the perpetrator. Thus, it appears that she did not know that the person she viewed near the time of the crime was the person she had seen once at an event several years earlier.

Defendant argues that requiring the participants in the corporeal lineup to close their eyes, lower their heads, and put their hands in their pockets was an unusual and an unreliable method of identification. However, Jackson requested that *all* the participants stand in this manner because it was the way she saw the perpetrator on the night of the crime, and it created the angle at which she viewed his face. Thus, having the participants pose in such a manner enhanced the reliability of an accurate identification. Notably, there was no evidence that defendant stood out from the other four lineup participants in any way. Defendant does not argue that Jackson's selection was the result of a procedure suggesting to her that defendant was an individual distinct from the other participants, which acted to compel her selection. Thus, with no evidence that there were any characteristics of defendant to significantly distinguish him from the other lineup participants,[1] there is no indication that the identification was based on an overly suggestive procedure.[2]

## II. INEFFECTIVE ASSISTANCE

Defendant further argues that his trial counsel provided ineffective assistance. Because this claim was not raised below, our review is limited to errors apparent on the record. *People v Unger* (*On Remand*), 278 Mich App 210, 253; 749 NW2d 272 (2008). A defendant's right to counsel is guaranteed by the United States and Michigan Constitutions. US Const, Am VI; Const 1963 art 1, § 20. This "right to counsel encompasses the right to the effective assistance of counsel." *People v Cline*, 276 Mich App 634, 637; 741 NW2d 563 (2007). The right is substantive and focuses on "the actual assistance received." *People v Pubrat*, 451 Mich 589, 596; 548 NW2d 595 (1996).

In order to demonstrate an ineffective assistance of counsel claim, a defendant must show (1) "that counsel's performance was deficient" and (2) "that counsel's deficient performance prejudiced the defense." *People v Taylor*, 275 Mich App 177, 186; 737 NW2d 790 (2007) (quotation marks and citation omitted). A counsel's performance is deficient if "it fell below an objective standard of professional reasonableness." *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007). The performance will be deemed to have prejudiced the defense if it is reasonably probable that, but for counsel's error, "the result of the proceeding would have been

---

[1] If there were such characteristics, we note that they would go to the weight rather than the admissibility of the identification unless there was a substantial likelihood of misidentification. *Kurylczyk*, 443 Mich at 306; *People v Hornsby*, 251 Mich App 462, 466; 650 NW2d 700 (2002).

[2] And because the pretrial identification was valid, Jackson's in-court identification stands and does not need "an independent basis" to support it. See *Gray*, 457 Mich at 114-115; *Kurylczyk*, 443 Mich at 303; *McElhaney*, 215 Mich App at 286, 288.

different." *Id.* The "[e]ffective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Rodgers*, 248 Mich App 702, 714; 645 NW2d 294 (2001).

Defendant claims that his trial counsel provided ineffective assistance when he failed to move to suppress Jackson's identification of him. However, as discussed previously, defendant has not demonstrated that the pretrial lineup procedures that resulted in the identification of defendant were suggestive. Thus, defendant's trial counsel had no grounds on which to suppress this identification testimony. Counsel cannot be ineffective for failing to make a futile or meritless objection. *People v Ericksen*, 288 Mich App 192, 200; 793 NW2d 120 (2010).

Defendant also argues that his trial counsel was deficient when he failed to obtain an expert to refute Detroit Police Officer Michael McGinnis, who was qualified as an expert in cell phone tower analysis. McGinnis tracked the location of the cell phone attributed to defendant during the time proximate to the murder. McGinnis tracked the cell phone moving toward the area where the murder occurred from 30 minutes before the 911 call reporting the shooting to 15 minutes before the 911 call. He found that the phone was next used in the area of the crime 18 seconds after the 911 call, and eleven more times in the next seven minutes from the same sector. Because of the disparate speeds of the movements, he concluded that the user was in a vehicle on the way to the murder scene and left via foot.

Defendant has failed to provide proof that another expert would have contradicted McGinnis. He attached an affidavit to his brief on appeal in which he claimed that he gave his trial attorney $1,500 to hire a phone expert and that his counsel did not do so or explain the failure to do so and did not refund the money. However, if we were to accept these assertions as true, which are not of record, defendant has provided nothing to establish that any phone expert would have provided testimony in his favor. Indeed, it is possible that counsel consulted an expert and determined that the opinion would not be helpful to defendant or that cross-examination would be more effective, perhaps because an expert would be compelled on cross-examination to outline points of agreement with the prosecution's expert witness. Notably, in many instances it is not necessary to retain an expert witness to counter the opposite party's expert because cross-examination may suffice to attack the testimony of the expert. *Harrington v Richter*, 562 US 86, 111; 131 S Ct 770; 178 L Ed 2d 624 (2011). Here, defendant's trial counsel thoroughly questioned McGinnis and established that the phone was not registered in defendant's name, that a location range was determined by relying on software and McGinnis was not a software engineer, that McGinnis did not know whether tower function, call volume, or obstructions affected the determination of the location range, that a "computer switching center" can move calls to a neighboring tower with a stronger signal available, and that someone with a degree in "radio frequency technology or geospatial technology" would be appropriate to evaluate cell phone tower switching. Counsel's decision regarding whether to call an expert witness is a matter of trial strategy. *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). Accordingly, defendant has not overcome the presumption that it was sound trial strategy to cross-examine McGinnis's testimony regarding the location of the cell phone, rather than to provide his own expert.

Defendant also argues that his trial counsel provided ineffective assistance when he failed to call Tanisha Shipp as a witness. In an affidavit attached to defendant's brief on appeal, which

is not part of the record, she stated that she had a child with defendant and that she was in possession of defendant's cell phone during the entire day of the killing. Although her purported testimony arguably would have been helpful to defendant because it would have shown that defendant was not in possession of the phone, which was shown to be in the area of the Family Dollar store at the time of the murder, there is no evidence in the record that Shipp (1) was willing to offer such testimony at the time of trial or (2) defense counsel was informed by defendant (or anyone) that she had his phone. Therefore, defendant has failed to show how counsel's performance fell below an objective level of reasonableness.

Moreover, assuming defendant could show that counsel's performance was deficient by not calling Shipp to testify, he has not established the requisite prejudice. It is highly unlikely that the jury would have given any credence to Shipp's testimony where she likely would have been viewed as biased. More to the point, the evidence demonstrated that defendant was the one who committed this crime and no one else: (1) a young man in a hooded sweatshirt was seen parking the car registered to defendant in the area of the Family Dollar store right before the murder, (2) the man was identified as defendant, (3) the man was seen walking in the parking lot right before the murder, (4) the man was seen fleeing the scene after shots were fired, (5) the same man returned to defendant's parked car, where he unsuccessfully attempted to enter the car, (6) the man was viewed thereafter walking down the street and talking on the phone, (7) phone records show that defendant's cell phone was used to call someone seven times immediately after the shooting, and (8) the person called was Taylor, who is defendant's long-time friend. Therefore, we hold that it is not reasonably probable that defense counsel's failure to call Shipp as a witness affected the outcome of this trial.

Affirmed.

/s/ Henry William Saad
/s/ Kathleen Jansen
/s/ Michael J. Kelly

-5-