# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

PIERRE LAMAR TAYLOR,

      Defendant-Appellant.

UNPUBLISHED
October 6, 2016

No. 310771
Wayne Circuit Court
LC No. 11-009674-01-FC

Before: SAAD, P.J., and JANSEN and M. J. KELLY, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of involuntary manslaughter, MCL 750.321, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced to 6 to 15 years' imprisonment for his involuntary manslaughter conviction, and two years' imprisonment for his felony-firearm conviction. We affirm.

After defendant was convicted, the trial court granted defendant's motion for a new trial for the reason that the prosecutor had knowingly presented false testimony. In a prior appeal by the prosecutor, this Court reversed that order and reinstated defendant's convictions and sentences. *People v Taylor*, unpublished opinion per curiam of the Court of Appeals, issued August 21, 2014 (Docket No. 318633). The trial court thereafter held an evidentiary hearing regarding defendant's claims of ineffective assistance of counsel. After the hearing, the court found that defendant was not entitled to a new trial on those claims.

The underlying facts are summarized in this Court's previous opinion as follows:

> This case arises from a shooting death in Detroit on June 12, 2011 at the scene of a street race on Epworth Street, a two-lane street in Detroit. The victim, Amran Najy, and four other passengers, arrived at the scene of the street race in a 2009 Chevrolet Impala. Nagy [sic] was killed when a bullet was fired into the vehicle. An officer on the scene said that Najy was "slumped over, stuck in the vehicle." Another officer observed that a bullet "had gone through the trunk lid into the rear passenger seat on the . . . passenger side." Based on the testimony of several witnesses at trial, a jury determined defendant to be the shooter.

-1-

One witness, Robert Hanson, testified at trial that he frequently attended the street races, and that he saw the Impala arrive at the scene. Further, as the driver of the car made a U-turn on Epworth Street in order to clear the way for the street race, Hanson saw defendant pull out a black gun and fire it toward the car. Hanson identified defendant at trial, saying that he could "never forget his face" because defendant "shot one of [Hanson's] friends that [he hung] out with every day." Hanson, who was standing 18 to 20 feet from defendant, testified that he saw defendant pick up the shell, throw it to his right, and tell a friend, "Oh, he's gonna be mad in the morning when he look[s] at that size of that bullet hole in his car." Approximately 10 minutes later, Hanson received a phone call and went to the intersection of Linwood Street and West Grand Boulevard, where he saw the Impala "mangled" on the median.

Two weeks later, Hanson saw defendant at the street races, and sent a text message to a detective with the license plate number of the car in which defendant arrived. Hanson identified defendant in a photographic lineup on July 24, 2011. [*Taylor*, unpub op at 1-2 (second, third, and fourth alterations in original).]

During an evidentiary hearing held after trial in connection with defendant's claim that the prosecution knowingly presented false testimony, Hanson admitted that he had lied under oath at trial. *Id*. at 4. In his police statement, Hanson stated that he had not personally seen anyone with a gun; rather, his cousin, Joseph Saldivar, pointed out defendant to Hanson as the man who fired at the Impala. *Id*. at 2. The trial court granted defendant's motion for a new trial, concluding that the prosecutor had knowingly presented false testimony. *Id*. at 4-5. However, on appeal, this Court reversed the trial court's order and remanded for reinstatement of defendant's convictions. *Id*. at 7. This Court concluded that the trial court clearly erred when it found the prosecutor knew that Hanson's trial testimony was false, and it also concluded that Hanson's testimony was not material, given that four other witnesses testified at trial and identified defendant as the shooter. *Id*. at 5-7. Our Supreme Court denied defendant's application for leave to appeal. *People v Taylor*, 497 Mich 1003 (2015).

The trial court then conducted an evidentiary hearing, spanning several months, concerning defendant's claims that he received ineffective assistance of counsel. After hearing testimony from several witnesses, the trial court concluded that defendant was not entitled to a new trial. Defendant now appeals, arguing (1) that trial counsel was ineffective for a variety of reasons, and (2) this Court erred when it reversed the trial court's order granting him a new trial on the basis that the prosecutor knowingly presented false testimony. We conclude that defendant is not entitled to a new trial.

## I. INEFFECTIVE ASSISTANCE OF COUNSEL[1]

---

[1] In his initial brief on appeal, defendant argues that trial counsel was ineffective for failing to move to suppress a video recording and photographs taken from that recording. However, in his

"The question whether defense counsel performed ineffectively is a mixed question of law and fact; this Court reviews for clear error the trial court's findings of fact and reviews de novo questions of constitutional law." *People v Trakhtenberg*, 493 Mich 38, 47; 826 NW2d 136 (2012). A factual finding "is clearly erroneous if it leaves this Court with a definite and firm conviction that a mistake has been made." *People v McElhaney*, 215 Mich App 269, 273; 545 NW2d 18 (1996). But with regard to credibility determinations, this Court must "defer to the trial court's superior ability to view the evidence and the witnesses." *Id.* at 278.

"Both the Michigan and the United States Constitutions require that a criminal defendant enjoy the assistance of counsel for his or her defense." *Trakhtenberg*, 493 Mich at 51. "In order to obtain a new trial, a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *Id.* There is a "strong presumption that counsel's performance was born from a sound trial strategy," *id.* at 52, and a criminal defendant bears a heavy burden to overcome that presumption, *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009).

## A. PRELIMINARY EXAMINATION TESTIMONY

Defendant first contends that counsel was ineffective for advising defendant to testify at the preliminary examination. We disagree.

At the preliminary examination, defendant, on questioning by his counsel, Ronald McDuffie, testified that he attended the street races held in Detroit on June 12, 2011, the day of the shooting. At trial, however, defendant testified that he was not present in that area on the day of the shooting. He explained that he had gone to the street races in Detroit on a single occasion. While he was unsure of the date he attended the races, defendant testified that it was not the day of the shooting. The prosecutor used defendant's preliminary examination testimony to impeach his trial testimony. Thus, defendant's preliminary examination testimony was harmful to defendant at trial.

At the evidentiary hearing held regarding defendant's ineffective assistance claims, McDuffie explained why he called defendant to testify. Defendant had told McDuffie that he was present at the races on the day the shooting occurred. Defendant explained, however, that he was with a relative the entire time, and thus was not the shooter. McDuffie believed the prosecutor's identification evidence was weak. He had also spoken with the prosecutor regarding the possibility of defendant taking a polygraph examination. McDuffie believed that even if defendant was bound over at the preliminary examination, if he passed a polygraph examination with a statement that was consistent with his preliminary examination testimony, the charges could be dropped. For his part, Rajesh Prasad, who prosecuted the case, confirmed that there were discussions regarding a polygraph examination. Prasad testified that he likely would not have dropped the charges had defendant passed such an examination, but that the ultimate decision whether to do so would have been "above [his] head."

reply brief, defendant states that this issue is "withdrawn." As defendant has abandoned the claim, we do not address it.

Defendant denied that any conversations took place concerning a polygraph examination. He testified that before the preliminary examination, he spoke with McDuffie and described a day he attended the races, but was not the same day as the shooting. He answered affirmatively when McDuffie asked if he was present in the area on June 12, 2011, because he was unaware of the date he was present in the area and assumed McDuffie was talking about the day he actually was present, not the day of the shooting. Defendant testified that McDuffie decided alone that defendant would testify.

When the trial court ruled on this issue, it found McDuffie credible.[2] It also found that the decision to have defendant testify was a strategic decision and that defendant had not shown that strategy to be unsound. We agree with the trial court's assessment. "The district court must consider not only the weight and competency of the evidence, but also the credibility of the witnesses, and it may consider evidence in defense." *People v Redden*, 290 Mich App 65, 84; 799 NW2d 184 (2010). See also *People v Yost*, 468 Mich 122, 127; 659 NW2d 604 (2003) ("Our prior case law recognizes the propriety of an examining magistrate's considering the credibility of witnesses."). Presenting defendant's testimony at the preliminary examination may have led the trial court to conclude that the prosecutor's witnesses were not credible. The record also supports McDuffie's explanation that had defendant passed a polygraph, the charges might have been dropped.[3] McDuffie's belief that consistent testimony at the preliminary examination would have aided defendant in this regard is not patently unsound.

Nor does it appear that there was any reason for McDuffie to expect that defendant's preliminary examination testimony would later harm him at trial. Clearly, throughout the preliminary examination, McDuffie was relying on defendant's explanation that while he was present in the area when the shooting occurred, he was not the shooter. Only later did defendant change his story, claiming he was not present at all on June 12, 2011.[4] But there was no reason for McDuffie to expect defendant's recollection to change so drastically between the preliminary examination and trial. While defendant's preliminary examination testimony proved damaging, this Court will not second-guess McDuffie's strategic choices with the benefit of hindsight. See *People v Dunigan*, 299 Mich App 579, 589-590; 831 NW2d 243 (2013). Thus, although the strategy of calling defendant to testify at the preliminary examination ultimately proved unsuccessful, defendant fails to overcome the presumption that trial counsel's performance was

---

[2] Defendant asks this Court to conclude that McDuffie's testimony was not credible. We decline the invitation. "Special deference is given to a trial court's findings when based on witness credibility." *People v Sherman-Huffman*, 241 Mich App 264, 267; 615 NW2d 776 (2000), aff'd 466 Mich 39 (2002).

[3] Although Prasad testified that a passed polygraph would likely not have changed his mind, he also explained that the decision was not his to make. Thus, despite Prasad's personal reluctance to dismiss a matter based on a polygraph, the possibility remained open.

[4] At the preliminary examination, before defendant testified, it had been made very clear that June 12, 2011, was when the shooting occurred. Thus, defendant's explanation that he believed McDuffie was asking about a day other than when the shooting occurred is simply unbelievable.

born of sound strategy.  See *People v Petri*, 279 Mich App 407, 412; 760 NW2d 882 (2008) ("A failed strategy does not constitute deficient performance.").

Defendant also argues that Tuddles should have sought to exclude defendant's preliminary examination testimony on the basis that it was the result of McDuffie's ineffective assistance at the preliminary examination.  Because defendant fails to demonstrate that McDuffie's strategy was unsound, any such motion would have failed.  "Counsel is not ineffective for failing to make a futile objection."  *People v Thomas*, 260 Mich App 450, 457; 678 NW2d 631 (2004).

## B.  TESTIMONY OF IRAN TARRANT

Defendant next contends that counsel should have contested the presentation of Iran Tarrant's preliminary examination testimony and requested a missing witness instruction on the basis that the prosecutor had not demonstrated the exercise of due diligence to procure Tarrant's appearance at trial.  We disagree.

Tarrant, who had identified defendant as the shooter at the preliminary examination, was not produced at trial.  The prosecutor moved to allow the presentation of Tarrant's preliminary examination testimony pursuant to MRE 804(b)(1) because Tarrant was unavailable, despite diligent efforts to procure his testimony.  After Sergeant Gary Diaz explained the efforts made to procure Tarrant's live testimony, Tuddles agreed that Tarrant's preliminary examination testimony was admissible.  Tuddles requested a missing witness instruction, but the trial court denied the request.

Defendant's claim of ineffective assistance fails because the arguments he claims Tuddles should have made were clearly meritless.  MRE 804(b)(1) permits the use of "[t]estimony given as a witness at another hearing of the same or a different proceeding, if the party against whom the testimony is now offered . . . had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination."  This exception to the general prohibition against the admission of hearsay is only available, however, if the witness is unavailable.  MRE 804(b).  A witness is deemed unavailable if the witness "is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance . . . by process or other reasonable means, and in a criminal case, due diligence is shown."  MRE 804(a)(5).

Defendant argues that the prosecutor did not demonstrate due diligence and that Tuddles was ineffective for failing to contest this requirement.  As our Supreme Court has explained,

> [t]he test for whether a witness is "unavailable" as envisioned by MRE 804(a)(5) is that the prosecution must have made a diligent good-faith effort in its attempt to locate a witness for trial.  The test is one of reasonableness and depends on the facts and circumstances of each case, i.e., whether diligent good-faith efforts were made to procure the testimony, not whether more stringent efforts would have produced it. [*People v Bean*, 457 Mich 677, 684; 580 NW2d 390 (1998).]

Defendant claims that the efforts made in this case consisted of "making a few attempts to serve process and then stopping when the mother of the witness says [Tarrant] does not want to come to court." The record does not support defendant's claim. As Diaz explained, Tarrant was initially cooperative. Diaz then attempted to visit Tarrant at his home before the start of trial, only to find that the home had burned down. Officers were eventually able to locate Tarrant's mother, who was belligerent, uncooperative, and indicated that Tarrant would not appear to testify. The prosecutor obtained a witness detainer. With the detainer in hand, the Fugitive Apprehension Team began searching for Tarrant. Unfortunately, despite pursuing a number of potential leads regarding Tarrant's location,[5] the team was unable to find him. Under the circumstances, the efforts made to locate Tarrant constituted diligent, good-faith efforts. Accordingly, an objection to the admission of his preliminary examination testimony would have been futile, as Tuddles aptly recognized. Counsel is not ineffective for failing to raise a futile objection. See *Thomas*, 260 Mich App at 457.

Defendant similarly contends that counsel should have sought a missing witness instruction. It is difficult to fault counsel on this point because Tuddles did pursue such an instruction through the end of trial. Further, the trial court correctly declined to give the instruction because it is warranted only if the prosecutor did not exercise due diligence to procure a witness's testimony, and we agree that the prosecutor established that Tarrant could not be produced despite the exercise of due diligence. See *People v Eccles*, 260 Mich App 379, 388; 677 NW2d 76 (2004).

### C. FAILURE TO INTERVIEW WITNESSES

Defendant next claims that Tuddles failed to interview two witnesses before calling them to testify, resulting in the loss of valuable information that could have been presented to the jury. We disagree.

The first of the two witnesses at issue is Michael Smith, defendant's uncle. Michael testified that he attended the street races on June 11, 2011, and that he was accompanied by defendant. He was sure this was the correct date because his wedding anniversary is June 10, and he remembered that his wife allowed him to go to the races the day after their anniversary. The second witness, defendant's cousin, Kourtney Manley, testified that he had gone to the races with defendant in the past, but that on June 11 2011, and June 12, 2011, he was in Dallas. He testified that he attended a street race in Detroit with defendant and other family members on or about June 20, 2011.

---

[5] The team checked Tarrant's bridge card usage, only to find that it had not been used for several months. They checked with the medical examiner's office. They tried to find a last known address from the post office. They checked police reports. They also tried to find utility services in Tarrant's name, but found none. Diaz attempted to call Tarrant on his personal cell phone, but the number was no longer in use.

At the evidentiary hearing, Michael testified that his trial testimony was incorrect. He did not attend the races with defendant on June 11, 2011, but rather, they attended the races on or about June 25, 2011. He also explained that he spoke briefly with Tuddles before testifying, but that their conversation was not about his impending testimony. Manley testified that indeed, he was in Dallas on the day of the shooting and that he had spoken to Tuddles regarding this fact immediately before testifying at trial. Tuddles explained that he met with every witness before calling them to testify. The trial court found that Tuddles had met with both Michael and Manley "in the hallway" and that he had also spoken to defendant himself regarding the testimony of these witnesses. The trial court concluded that although Tuddles might have done more, additional investigation into these witnesses would not have changed their testimony or the outcome of trial.

Trial counsel has a duty to make a reasonable investigation or a reasonable decision that makes a particular investigation unnecessary. *Trakhtenberg*, 493 Mich at 52. But as the trial court concluded, Tuddles did not fail to investigate these witnesses. And in any event, "the failure to interview witnesses does not itself establish inadequate preparation." *People v Caballero*, 184 Mich App 636, 642; 459 NW2d 80 (1990). Rather, "[i]t must be shown that the failure resulted in counsel's ignorance of valuable evidence which would have substantially benefited the accused." *Id*. Michael's allegedly inaccurate testimony was not the result of a lack of preparation by Tuddles. Rather, Michael explained that his trial testimony was the result of a lack of sleep. Manley's trial testimony was essentially identical to what he stated at the evidentiary hearing. Nothing in the record indicates that any lack of preparation by Tuddles resulted in him being ignorant of important evidence. Accordingly, defendant has not established entitlement to relief.

## D. FAILURE TO IMPEACH HANSON

Defendant next contends that Tuddles was ineffective for failing to impeach Hanson with his prior statement to the police. We disagree.

Defendant contends, and the prosecution agrees, that Tuddles should have made additional attempts to impeach Hanson with his statement to the police. But we need not decide that question, because this Court has already determined that it is "not reasonably likely that Hanson's testimony could have affected the jury's judgment." *Taylor*, unpub op at 7. To prevail on his ineffective assistance claim, defendant bears the burden of demonstrating that it is reasonably likely that Tuddles's failure to impeach Hanson's trial testimony affected the outcome of trial. But if it is not reasonably likely that Hanson's trial testimony affected the jury's verdict, it cannot be said that impeaching that testimony would have any likelihood of leading to a different result.

The prosecutor suggests that this Court's prior analysis was merely dictum, and thus, not binding on this Court. But "an issue that is intentionally addressed and decided is not dictum if the issue is germane to the controversy in the case, even if the issue was not necessarily decisive of the controversy in the case." *Griswold Props, LLC v Lexington Ins Co*, 276 Mich App 551, 563; 741 NW2d 549 (2007). See also *Pew v Mich State Univ*, 307 Mich App 328, 334; 859 NW2d 246 (2014). That is precisely the situation presented here. While not dispositive, the question whether Hanson's testimony was material was germane to the controversy previously

before this Court, and clearly, this Court intentionally addressed and decided the question. Accordingly, this Court's prior determination of the question is not dictum.

"The law of the case doctrine holds that a ruling by an appellate court on a particular issue binds the appellate court and all lower tribunals with respect to that issue." *Ashker ex rel Estate of Ashker v Ford Motor Co*, 245 Mich App 9, 13; 627 NW2d 1 (2001). While there are certain exceptions to this rule, none apply here.[6] Accordingly, we are bound by this Court's prior determination regarding the effect of Hanson's testimony, precluding relief.[7]

## E.  FAILURE TO CALL WITNESSES

Defendant contends that trial counsel was ineffective for failing to call potential alibi witnesses. We disagree.

At trial, defendant testified that he was not at the races on the night of the shooting, and instead, was riding his motorcycle in Detroit along with either Deputy Jeffrey Mathes or Anthony Simpson. At the evidentiary hearing, defendant explained that he, Simpson, and Tuddles spoke on the telephone, and after the conversation, defendant realized he must have been riding with Mathes. Tuddles explained at the hearing that he contacted Mathes, who denied having been with defendant on June 11, 2011. Thus, Tuddles did not call Mathes to testify. Mathes, however, testified that he was not contacted by Tuddles. Mathes explained that he had, in fact, gone riding with defendant on one occasion. However, Mathes could not remember when he did. He also testified that when he went riding with defendant, it was early evening, and they "started maybe in the afternoon and rode toward the evening."

Clearly, the failure to call Simpson was of no moment, as defendant eventually realized that Simpson was not the man he claimed to have been riding with on the day of the shooting. Given that Mathes could not recall what day he rode with defendant, and that he did not testify to riding with defendant during the same time of day when the shooting occurred, his testimony would not have made a difference in the outcome of the trial. " '[T]he failure to call witnesses only constitutes ineffective assistance of counsel if it deprives the defendant of a substantial defense.' " *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012) (citation omitted) " 'A substantial defense is one that might have made a difference in the outcome of the trial.' "

---

[6] The law of the case doctrine "will not be applied if the facts do not remain materially or substantially the same or if there has been a change in the law." *Grace v Grace*, 253 Mich App 357, 363; 655 NW2d 595 (2002). But here, there have been no changes to the operative facts, and no changes in the law, since this Court's prior opinion. The doctrine is also inapplicable if the prior decision amounts to mere obiter dictum. See *Johnson v White*, 430 Mich 47, 54 n 2; 420 NW2d 87 (1988). But as explained, this Court's prior decision on the issue was not dictum.

[7] Even if we were not bound by this Court's prior decision, we agree with it. Because four other witnesses identified defendant as the shooter, Hanson's testimony was cumulative and not likely to affect the outcome of the trial.

*People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009) (citation omitted).  Defendant's contention is, therefore, without merit.  See *id*.[8]

## F.  FACEBOOK POST

Defendant next contends that Tuddles was ineffective for failing to seek the admission of a Facebook post, written by defendant.  We disagree.

The post, dated June 11, 2011, stated that defendant was going to Detroit to "Summer Jams," and then to the "island."  Defendant claims that this post was admissible to show how he "determined who he had been riding motorcycles with and to provide the context within which the jury could understand how he now says it was Mathes."  Limited to the purpose for which defendant asserts he would have sought the post's admission, the post had virtually no probative value.  The post says nothing about Mathes or about riding motorcycles.  Further, defendant was permitted to testify at trial that his memory (specifically, that he was not at the races on June 11, 2011, or June 12, 2011) was jogged by a conversation he had with his sister, Lakita Smith.  At the evidentiary hearing, defendant explained that in the conversation he had with Lakita, she brought up the Facebook post, and from that post, the two concluded that defendant was not at the races on June 11, 2011, or June 12, 2011.  Lakita later testified that she

> happened to go on [defendant's] Facebook and went to the date back to June and his post was June 11[th], and it said something about Summer Jams, going to the city.  When I just started thinking back, like, I remember mama saying she saw him getting on the highway on his bike – she saw him getting on the highway on his bike around midnight . . . .

Thus, the Facebook post itself would have added very little, as it was cumulative of testimony already before the jury.  Accordingly, admission of the post for the limited purpose cited by defendant was not reasonably likely to change the outcome of trial.[9]

---

[8] Defendant's appellate brief refers to another witness who he claims did not testify, Anthony Smith, but defendant fails to explain why Smith should have been called.  To the extent defendant intends to argue that counsel was ineffective for failing to call Smith, by failing to address the merits of the issue, it has been abandoned.  See *Payne*, 285 Mich App at 188.  Further, Tuddles *did* call Smith to testify at trial.

[9] Clearly, the relevant purpose of admitting the statement would have been to prove defendant's whereabouts.  This use of the statement, however, would have violated the prohibition against hearsay, as the statement would have been admitted to prove the truth of the matter asserted in the statement.  See *People v Musser*, 494 Mich 337, 350; 835 NW2d 319 (2013).  Defendant further contends that rules of evidence cannot deprive a defendant of his right to present a defense.  Defendant was not deprived of his right to present a defense, because he was able to present his alibi defense through his own testimony.  Further, the rules of evidence do not infringe on the right to present a defense unless shown to be arbitrary or disproportionate to the

## G. SEQUESTRATION ORDER

Finally, defendant argues that trial counsel was ineffective for his handling of the fact that after Hanson testified, several prosecution witnesses spoke with him before testifying themselves, in violation of a court order. We disagree.

After Hanson testified, he spoke with several other witnesses outside of court who had yet to testify themselves. Tuddles cross-examined each of these witnesses regarding their conversations. Each explained that they did not discuss the shooting, but rather, the manner of Tuddles's questioning. In his closing argument, Tuddles asked the jurors to question the credibility of these witnesses, arguing that perhaps they were influenced by Hanson or each other.

Defendant now contends that Tuddles should have asked the trial court to strike the testimony of these witnesses or declare a mistrial. Generally, there are three remedies available when a witness violates a sequestration order: holding the offending witness in contempt, allowing cross-examination regarding the violation, or precluding the witness from testifying. *People v Meconi*, 277 Mich App 651, 654; 746 NW2d 881 (2008). But precluding witnesses from testifying "is an extreme remedy that should be sparingly used." *Id.* Simply because the witnesses spoke with each other outside of court, and not regarding the substance of their testimony, would not warrant such an extreme sanction. Cf. *id*. at 654-655 (where a witness had been present in the courtroom in violation of a sequestration order, but heard only "short opening statements, not testimony," it was an abuse of discretion to prohibit the witness from testifying). Rather, under the circumstances, Tuddles pursued a reasonable course of action—cross-examining the witnesses regarding their conversations. Tuddles then used the testimony he elicited to argue that the witnesses were not credible. This was a reasonable strategic choice by counsel. Counsel was not ineffective for failing to request a more severe sanction, which almost certainly would have been denied.

## H. CUMULATIVE ERROR

Defendant argues that even if the alleged errors do not present a reasonable likelihood of a different result when viewed individually, taken in the aggregate, they establish the requisite prejudice. We disagree. "It is true that the cumulative effect of several errors can constitute sufficient prejudice to warrant reversal where the prejudice of any one error would not." *People v LeBlanc*, 465 Mich 575, 591; 640 NW2d 246 (2002). But this is not such a case. The question at trial was whether defendant was the shooter. In this regard, defendant was convicted on the strength of testimony from several eyewitnesses. Although defendant attempted to claim he was not present when the crime occurred, testimony from one of his own witnesses, Michael Smith, placed him at the scene. Defendant also placed himself at the scene of the crime at the preliminary examination, only to later change his story and contend that he was not present at all. Nor was he able, either at trial or in post-trial proceedings, to present a witness who could truly verify his alibi. Whether considered individually or in the aggregate, the few instances where

purpose of the rule. See *People v King*, 297 Mich App 465, 474; 824 NW2d 258 (2012). Defendant does not even attempt to make such a showing with regard to the hearsay rules.

Tuddles might have done more did not prejudice defendant. Accordingly, a new trial is not warranted.

## II. PRESENTATION OF PERJURED TESTIMONY

Defendant contends that this Court erred in its prior decision when it reversed the trial court's order granting him a new trial on the basis that the prosecutor knowingly presented false testimony. We are precluded from reconsidering this issue. "The law of the case doctrine holds that a ruling by an appellate court on a particular issue binds the appellate court and all lower tribunals with respect to that issue." *Ashker*, 245 Mich App at 13. Finding no applicable exceptions to the doctrine, we reject defendant's attempt to relitigate this issue.

Affirmed.

/s/ Henry William Saad
/s/ Kathleen Jansen
/s/ Michael J. Kelly