# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

STEVEN JOSEPH LEPPER,

      Defendant-Appellant.

UNPUBLISHED
December 13, 2016

No. 327490
Wayne Circuit Court
LC No. 14-011026-02-FC

---

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

DAN LARKIN BOZEMAN,

      Defendant-Appellant.

No. 327604
Wayne Circuit Court
LC No. 14-011026-01-FC

---

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

ROGER RAYMOND DIEPENHORST,

      Defendant-Appellant.

No. 329411
Wayne Circuit Court
LC No. 14-011026-03-FH

---

Before: M. J. KELLY, P.J., and MURRAY and BORRELLO, JJ.

PER CURIAM.

In these consolidated appeals, defendants Steven Lepper, Dan Bozeman, and Roger Diepenhorst each appeal as of right their jury convictions and sentences arising from two separate carjacking incidents, both of which occurred during the early morning hours of

-1-

November 30, 2014. In the first incident, involving victim Thomas Jackson, the defendants were successful in obtaining the victim's car. During that incident, one or more of the defendants fired gunshots at Jackson as he ran from the scene. In the second incident, committed approximately an hour after the first, one or more of the defendants fired gunshots at the intended victim, Lana Stanton, as she drove off, and additional shots were fired at a neighbor, Starkeisha West, who was watching the attempted carjacking from her house. The three defendants were tried jointly, with defendant Lepper before one jury and defendants Bozeman and Diepenhorst before a second jury.

In Docket No. 327490, the jury convicted Lepper of two counts of carjacking, MCL 750.529a, two counts of assault with intent to commit murder, MCL 750.83, three counts of felonious assault, MCL 750.82, one count of intentional discharge of a firearm at a dwelling, MCL 750.234b, and one count of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced Lepper to concurrent prison terms of 200 to 400 months each for the carjacking and assault with intent to commit murder convictions, 5 to 10 years for the intentional discharge of a firearm conviction, and 2 to 4 years for each felonious assault conviction, to be served consecutive to a two-year term of imprisonment for the felony-firearm conviction.

In Docket No. 327604, the jury convicted Bozeman of two counts of carjacking, two counts of assault with intent to commit murder, three counts of felonious assault, one count of intentional discharge of a firearm at a dwelling, and one count of felony-firearm. The trial court sentenced Bozeman to concurrent prison terms of 200 to 400 months each for the carjacking and assault with intent to commit murder convictions, 5 to 10 years for the intentional discharge of a firearm conviction, and 2 to 4 years for each felonious assault conviction, to be served consecutive to a two-year term of imprisonment for the felony-firearm conviction.

In Docket No. 329411, the jury convicted Diepenhorst of two counts of carjacking, one count of assault with intent to commit murder, two counts of felonious assault, and one count of felony-firearm. The trial court sentenced Diepenhorst to concurrent prison terms of 200 to 400 months each for the carjacking and assault with intent to commit murder convictions, and 2 to 4 years for the felonious assault convictions, to be served consecutive to a two-year term of imprisonment for the felony-firearm convictions.

For the reasons below, we affirm each defendant's convictions, but vacate each defendant's sentences and remand for resentencing.

## I. DOCKET NO. 327490

### A. SUFFICIENCY OF THE EVIDENCE

Defendant Lepper first argues that the prosecution failed to present sufficient evidence to support his convictions. This Court reviews a challenge to the sufficiency of the evidence de novo. *People v Henderson*, 306 Mich App 1, 8; 854 NW2d 234 (2014). We are required to view the evidence in a light most favorable to the prosecution, resolving all evidentiary conflicts in its favor, and determine whether a rational trier of fact could have found that the essential elements of the charged crimes were proved beyond a reasonable doubt. *People v Dunigan*, 299 Mich

App 579, 582; 831 NW2d 243 (2013). "Circumstantial evidence and reasonable inferences arising therefrom may constitute proof of the elements of [a] crime." *People v Bennett*, 290 Mich App 465, 472; 802 NW2d 627 (2010). This Court defers to the credibility assessments made by a jury. *Henderson*, 306 Mich App at 9.

Lepper argues that the prosecution failed to present sufficient evidence of (1) his identity as a perpetrator of the charged crimes, (2) an intent to kill to support his convictions of assault with intent to commit murder involving victims Stanton and West, and (3) the elements necessary to prove the charged carjackings beyond a reasonable doubt.

## 1. IDENTITY

Identity is an element of every criminal offense. *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). "[P]ositive identification by witnesses may be sufficient to support a conviction . . ." *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000). In general, the credibility of identification testimony "is a question for the trier of fact that we do not resolve anew." *Id.*

Both Stanton and West identified Lepper as one of the three persons involved in the offenses committed against them. According to Stanton, Lepper darted out from behind her car, attempted to grab the door handle of her car as she took off, and then shot at her vehicle as she was driving away. West testified that Lepper was the person who shot toward her as she was looking out the window of her house. Although Lepper challenges the admissibility of Stanton's and West's identification testimony, as discussed in section I(B), there was no error in the admission of their testimony. Moreover, in addition to the witnesses' identification testimony, the prosecution presented evidence that, shortly after the offenses, Lepper, Bozeman, and Diepenhorst were all located near each other, in the vicinity of the offenses, attempting to hide and avoid detection. Handguns connected to the two carjackings, as well as two pairs of gloves similar to those worn by the carjackers, were found nearby. In addition, Lepper admitted to the police that he and Diepenhorst were both armed, and he admitted being present during the carjackings. Although Lepper argues that he was "merely present" while Bozeman performed the carjackings by himself, Stanton and West both identified Lepper as an active participant in the offenses. In addition to this eyewitness testimony, evidence supported a finding that three of the four recovered guns had been fired. Casings from the two semi-automatics were found and the "rusty" revolver had spent shell casings in its chambers. Moreover, one of the handguns, a Desert Eagle, had been reported missing by Lepper's great uncle, John Wilkenson. Viewed in a light most favorable to the prosecution, the evidence was sufficient to allow the jury to find beyond a reasonable doubt that Lepper was an active participant in the charged offenses.

## 2. INTENT

The elements of assault with intent to commit murder are (1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder. *People v Barclay*, 208 Mich App 670, 674; 528 NW2d 842 (1995). The specific intent to kill may be proven by inferences from any facts in evidence, including circumstantial ones such as the use of a dangerous weapon. *Id.*; *Henderson*, 306 Mich App at 11; *People v DeLisle*, 202 Mich App 658, 672; 509 NW2d 885 (1993). " '[B]ecause it can be difficult to prove a defendant's state of mind

-3-

on issues such as knowledge and intent, minimal circumstantial evidence will suffice to establish the defendant's state of mind. . . .' " *Henderson*, 306 Mich App at 11, quoting *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008).

The testimony that Lepper deliberately shot at Stanton and West supports the jury's determination that he intended to kill them. Stanton testified that Lepper began shooting at her when her car was a few feet away. She felt bullets strike her driver's side door. West testified that Lepper was within 10 feet when he shot at her as she was looking out her window. The evidence that Lepper intentionally discharged a firearm pointed in the direction of Stanton and West supports an inference of an intent to kill. *People v Johnson*, 54 Mich App 303, 304; 220 NW2d 705 (1974). Further, the fact that neither victim was struck does not negate that Lepper acted with an intent to kill. The evidence was sufficient to enable the jury to find beyond a reasonable doubt that Lepper intended to kill both Stanton and West.

### 3. CARJACKING

Lepper next argues that the evidence was insufficient to sustain his convictions of carjacking. MCL 750.529a defines carjacking, in pertinent part, as follows:

> (1) A person who in the course of committing a larceny of a motor vehicle uses force or violence or the threat of force or violence, or who puts in fear any operator, passenger, or person in lawful possession of the motor vehicle, or any person lawfully attempting to recover the motor vehicle, is guilty of carjacking, a felony punishable by imprisonment for life or for any term of years.

> (2) As used in this section, "in the course of committing a larceny of a motor vehicle" includes acts that occur in an attempt to commit the larceny, or during commission of the larceny, or in flight or attempted flight after the commission of the larceny, or in an attempt to retain possession of the motor vehicle.

"A carjacking occurs in the course of committing a larceny of a motor vehicle[.] While doing so, a defendant must use (1) force or violence, (2) the threat of force or violence, or (3) put in fear any operator, passenger, or person in lawful possession of the motor vehicle, or any person lawfully attempting to recover the motor vehicle." *People v Hardy*, 494 Mich 430, 444; 835 NW2d 340 (2013) (quotation marks and footnotes omitted).

According to Lepper, no carjacking occurred with respect to Stanton's car because she never relinquished control of it. However, the statutory phrase "in the course of committing a larceny of a motor vehicle" is defined to include "acts that occur in an attempt to commit the larceny," and Lepper's act of trying to grab the car's door handle was sufficient evidence of an "attempt to commit the larceny" of Stanton's car. Lepper also claims that no evidence of his intent to commit a larceny of a motor vehicle was presented, but the fact that the trio had recently committed one carjacking, but then crashed the van, supports a finding that they similarly intended to take Stanton's vehicle.

Lepper also contends that the evidence did not support a finding that he intended to permanently deprive Jackson of his motor vehicle. However, because intent to permanently

-4-

deprive is not an element of the crime of carjacking, *People v Green*, 228 Mich App 684, 697-698; 580 NW2d 444 (1998), this argument is without merit.

## B. IDENTIFICATION TESTIMONY

For his next argument, Lepper contends that his due process rights were violated by the introduction of West's and Stanton's identification testimony. "For an issue to be preserved for appellate review, it must be raised, addressed, and decided by the lower court." *People v Metamora Water Serv, Inc*, 276 Mich App 376, 382; 741 NW2d 61 (2007). Lepper did not object to the challenged identification testimony at trial, or challenge any identification evidence in an appropriate pretrial motion. Although he maintains that he raised this issue in a motion to quash, he only argued in that motion that the trial court should dismiss the charges pertaining to the Jackson carjacking. Accordingly, this issue is unpreserved, and our review is limited to plain error affecting Lepper's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

Lepper's arguments conflate several concepts related to pretrial identification procedures. He first appears to argue that the pretrial photo identification procedures used with Stanton and West were improper. In *People v Gray*, 457 Mich 107, 111; 577 NW2d 92 (1998), our Supreme Court explained:

> A photographic identification procedure violates a defendant's right to due process of law when it is so impermissibly suggestive that it gives rise to a substantial likelihood of misidentification. . . . [A]n improper suggestion often arises when the witness when called by the police or prosecution either is told or believes that the police have apprehended the right person. Moreover, when the witness is shown only one person or a group in which one person is singled out in some way, he is tempted to presume that he is the person. [Quotations and footnote omitted.]

The record discloses that the police conducted photo arrays with both Stanton and West. Stanton did not identify any defendant, but incorrectly selected another subject. West identified Lepper's photo. Lepper does not assert that the photo array in which his photo was placed was improper, nor does he argue that the police somehow "suggested" which photograph West should choose. Although Lepper contends that the identification process may have been tainted because West spoke with Stanton after the shooting, and before West viewed the photo arrays, West only stated that she and Stanton were at the station together and that the two spoke about the shooting. There is no indication that Stanton's presence or that their conversation somehow tainted or influenced West's identification. Indeed, Stanton did not select any of the defendants' photographs, and she incorrectly chose another individual, while West chose Lepper from his array. There is no basis for concluding that West's identification of Lepper was tainted by an impermissibly suggestive identification procedure.

Lepper also appears to argue that Stanton's identification testimony should not have been admitted because she stated that she was shown other photographs of the defendants before the preliminary examination. Stanton explained at trial, however, that when she stated at the preliminary examination that an officer had shown her photographs of the defendants before she

-5-

testified, she was referring to the photographic arrays that were shown to her at the police station after the offense, which were the only photographs she was shown. Thus, the record does not support Lepper's argument.

What Lepper clearly does argue, however, is that because he was in custody, the police should have held a corporeal lineup rather than show West and Stanton photo arrays. It is true that identification by a corporeal lineup is generally required when an accused is in custody unless a legitimate reason for holding a photographic lineup exists. *People v Kurylczyk*, 443 Mich 289, 298; 505 NW2d 528 (1993). Legitimate reasons for conducting a photographic lineup instead when a defendant is in custody include (1) it is not possible to arrange a proper lineup, (2) there are an insufficient number of individuals available who have similar physical characteristics, (3) the nature of the case requires an immediate identification, (4) the witnesses are located too far away from the location of the accused, (5) the accused refuses to participate and would seek to destroy the value of the identification. *People v Anderson*, 389 Mich 155, 186 n 1, 187 n 2-5; 205 NW2d 461 (1973), overruled in part on other grounds by *People v Hickman*, 470 Mich 602; 684 NW2d 267 (2004). Because the issue was not raised below, there was no opportunity to establish a record regarding the existence of an exception to the general rule that a corporeal lineup should be conducted when the accused is in custody. Moreover, Lepper does not even discuss the exceptions and their applicability, or lack thereof, to his case. Accordingly, no plain error has been shown.

Lepper also argues that the trial court should not have allowed Stanton to identify him as one of the individuals who tried to take her car because she did not identify him in the photo array, and that West should not have been permitted to testify because she allegedly inaccurately described him as a black male during the preliminary examination. However, a witness's inability to identify a defendant at a pretrial identification procedure, or discrepancies in a witness's description of a suspect, affect only the weight of the identification testimony, not its admissibility. *Barclay*, 208 Mich App at 676.

We likewise reject Lepper's argument that the preliminary examination itself was an impermissibly suggestive pretrial identification procedure because at that time he was wearing prison clothing and seated next to the attorneys. Because Stanton first identified Lepper at the preliminary examination while he was in prison clothing, this procedure could be viewed as suggestive. See *People v Colon*, 233 Mich App 295, 305; 591 NW2d 692 (1998) (finding that the preliminary examination was a suggestive atmosphere where the defendant was placed in the courtroom in prison garb). But "[s]imply because an identification procedure is suggestive does not mean it is necessarily constitutionally defective." *Id*. at 304. When considering the totality of the circumstances to determine whether an identification procedure was so suggestive that it led to a substantial likelihood of misidentification, courts should consider (1) the witness's opportunity to view the defendant during the crime, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description, (4) the witness's level of certainty at the identification, and (5) the length of time between the crime and the identification. *Id*. at 304-305. Stanton testified that she had the opportunity to observe Lepper and the others as they approached her car and that she used her high beam lights to view them more clearly. She testified that she was paying attention to them as they approached, and as Lepper tried to grab her door handle. Her description of Lepper was accurate, and she testified that she was certain of her identification. The preliminary examination occurred approximately two weeks after the

-6-

charged carjacking. Because the totality of the circumstances fails to show that there was a substantial likelihood of misidentification, Lepper has not met his burden of establishing a plain error.

## C. SENTENCING

Lepper argues that resentencing is required because the trial court erred in scoring several offense variables. We agree.

Although Lepper did not object to the scoring of offense variable (OV) 6 on the same ground raised on appeal, we conclude that the trial court's scoring of this variable was plain error, which affected Lepper's substantial rights because it altered the appropriate guidelines range. *Carines*, 460 Mich at 763-764. OV 6 considers the offender's intent to kill or injure another person, MCL 777.36, and the court is directed to score 25 points if "[t]he offender had unpremeditated intent to kill, the intent to do great bodily harm, or created a very high risk of death or great bodily harm knowing that death or great bodily harm was the probable result." MCL 777.36(1)(b). However, the sentencing guidelines explicitly limit the scoring of OV 6 to the sentencing offenses of "homicide, attempted homicide, conspiracy or solicitation to commit a homicide, or assault with intent to commit murder." MCL 777.22(1). Because the sentencing offense in this case was carjacking, the trial court's assessment of 25 points for OV 6 was plain error. A 25-point reduction will lower Lepper's placement in OV Level VI to OV Level V, resulting in a lower guidelines range.[1] Because the scoring error affects the appropriate guidelines range, resentencing is required. *People v Francisco*, 474 Mich 82, 89 n 8; 711 NW2d 44 (2006).

Lepper also argues that the trial court impermissibly engaged in judicial fact-finding to score several offense variables, entitling him to relief under *People v Lockridge*, 498 Mich 358; 870 NW2d 502 (2015). Because we have already determined that Lepper is entitled to be resentenced, it is unnecessary to address whether Lepper is also entitled to sentencing relief under *Lockridge*. On remand, however, the trial court shall resentence Lepper in conformity with *Lockridge*.

## II. DOCKET NO. 327604

## A. ADMISSION OF EVIDENCE

Defendant Bozeman argues that he was denied a fair trial when the trial court permitted his jury to hear the testimony of John Wilkenson, who was Lepper's great uncle. Wilkenson

---

[1] Plaintiff also concedes that the trial court erred by assessing 25 points, instead of 10 points, for OV 9, because OV 9 is to be scored only on the basis of the defendant's conduct during the sentencing offense, *People v McGraw*, 484 Mich 120, 124; 771 NW2d 655 (2009), and the evidence established that there were, at most, nine victims associated with the Stanton carjacking offense. MCL 777.39(1)(c). An additional 15-point reduction would place Lepper in OV Level IV, resulting in an even lower guidelines range.

testified that he owned a Desert Eagle handgun, but discovered that it was missing. He identified the recovered gun as his gun. Bozeman argues that only Lepper's separate jury should have been permitted to hear this testimony, which Bozeman maintains was not relevant to his case. Because Bozeman did not object to this testimony at trial, this issue is unpreserved and our review is limited to plain error affecting Bozeman's substantial rights. *Carines*, 460 Mich at 763-764.

Generally, all relevant evidence is admissible. MRE 402. Relevant evidence is evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." MRE 401. Stanton testified that Bozeman was armed with a firearm, which she recognized as a Desert Eagle pistol. Stanton also testified that Lepper was involved in the attempt to take her car. A Desert Eagle pistol was among the firearms recovered near where Lepper and Bozeman were hiding, and casings found at the crime scene were matched to that firearm, which Wilkenson testified was the same gun that he discovered was missing from his house. Wilkenson's testimony was relevant to explain how Bozeman, through his association with Lepper, could have acquired the type of gun that Stanton claimed Bozeman possessed during the offense. Thus, Wilkenson's testimony was admissible against Bozeman. Although Bozeman complains that Wilkenson thought that Lepper stole the firearm from him, he acknowledges that this theory was not presented to the jury. Accordingly, there was no plain error in the admission of the challenged testimony.

## B. DOUBLE JEOPARDY

Bozeman next argues that his multiple convictions for assault with intent to commit murder and felonious assault violated his double jeopardy protections. Because Bozeman did not preserve this issue by raising it in the trial court, we review it for plain error affecting his substantial rights. *Carines*, 460 Mich at 763-764.

The United States and Michigan Constitutions both protect against double jeopardy. US Const, Am V; Const 1963, art 1, § 15. The double jeopardy provisions afford individuals "three related protections:" they protect against (1) "a second prosecution for the same offense after acquittal"; (2) "a second prosecution for the same offense after conviction;" and (3) "multiple punishments for the same offense." *People v Ream*, 481 Mich 223, 227; 750 NW2d 536 (2008), quoting *People v Nutt*, 469 Mich 565, 574; 677 NW2d 1 (2004). The first two protections are referred to as the "successive prosecutions" strand of double jeopardy, *Nutt*, 469 Mich at 575, while the third comprises the "multiple punishments" strand, *People v Smith*, 478 Mich 292, 299; 733 NW2d 351 (2007). Bozeman focuses on the double jeopardy protection against multiple punishments for the same offense.

The *Blockburger*[2] "same-elements test" is used to determine if multiple convictions arising from a single offense violate the double jeopardy protection against multiple punishments for the same offense. Under this test, if each offense "requires proof of a fact which the other

---

[2] *Blockburger v United States*, 284 US 299, 304; 52 S Ct 180; 76 L Ed 306 (1932).

does not," then multiple punishments may be imposed. *Smith*, 478 Mich at 305 (citation omitted). Felonious assault requires the use of an actual dangerous weapon, i.e., "a gun, revolver, pistol, knife, iron bar, club, brass knuckles, or other dangerous weapon." MCL 750.82(1). Conversely, to prove a charge of assault with intent to commit murder, the prosecutor need not present any evidence regarding the actual use of a weapon, real or implied. To be guilty of assault with intent to commit murder, the defendant must commit the assault with "an actual intent to kill," *People v McRunels*, 237 Mich App 168, 181; 603 NW2d 95, 102 (1999), which is not an element of felonious assault. Because each offense requires proof of a distinct element, multiple convictions for both offenses, arising from a single assault, do not violate the double jeopardy clauses. Cf. *People v Strawther*, 480 Mich 900; 739 NW2d 82 (2007) (because assault with intent to do great bodily harm and felonious assault have different elements, a defendant may be convicted and punished for both offenses).

## C. SENTENCING ERROR

Bozeman seeks sentencing relief based on errors in the scoring of the sentencing guidelines. He also argues that his sentences are unreasonable under *Lockridge*. We conclude that resentencing is required because, as explained in section I(C), the trial court erred as a matter of law in assessing 25 points for OV 6 when scoring the guidelines for Bozeman's carjacking conviction. See MCL 777.22(1). In addition, as plaintiff concedes, the trial court erred in assessing 25 points, instead of 10 points, for OV 9 where the evidence established that there were, at most, nine persons placed in danger during the Stanton carjacking offense. MCL 777.39(1)(c). Because these scoring errors affect Bozeman's guidelines range, Bozeman is entitled to resentencing. *Francisco*, 474 Mich at 89 n 8.

Because we are remanding for resentencing, it is not necessary to consider Bozeman's additional argument based on *Lockridge*. On remand, however, the trial court shall resentence Bozeman in conformity with *Lockridge*.

## III. DOCKET NO. 329411

## A. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant Diepenhorst argues that his trial counsel was ineffective for failing to challenge the admissibility of a statement that Diepenhorst made to a police officer while being transported to an interview location. At trial, the officer testified that he asked Diepenhorst how he was doing and Diepenhorst responded by stating that he was not doing too good, that he was just trying to get some money to hire an attorney to get his son back, and that things went bad. Diepenhorst argues that defense counsel was ineffective for not moving to suppress this statement on the ground that it was made before any *Miranda*[3] warnings were given.

Diepenhorst acknowledges that he did not raise this issue below. Therefore, our review is limited to errors apparent from the record. *People v Matuszak*, 263 Mich App 42, 48; 687 NW2d

---

[3] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

342 (2004). To establish ineffective assistance of counsel, Diepenhorst "must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012).

In *People v Daoud*, 462 Mich 621, 624 n 1; 614 NW2d 152, 154 (2000), our Supreme Court explained:

> The now-familiar *Miranda* warnings require the police, before a custodial interrogation, to inform a suspect (1) that he has the right to remain silent, (2) that anything he says can and will be used against him in court, (3) that he has a right to the presence of an attorney during any questioning, and (4) that if he cannot afford an attorney one will be appointed for him.

"*Miranda* warnings are required only when a person is subjected to custodial interrogation." *People v McElhaney*, 215 Mich App 269, 278; 545 NW2d 18 (1996) "[F]or purposes of *Miranda*, interrogation means express questioning, or any words or actions on the part of the police, that the police should know is reasonably likely to elicit an incriminating response from the suspect." *Id*. at 279. General questions that are not designed to elicit an incriminating response do not require that warnings be given. *Id*.

The police officer's general question does not qualify as police interrogation because it was not reasonably calculated to elicit an incriminating response. Therefore, Diepenhorst's statement was admissible despite the lack of *Miranda* warnings. Accordingly, any effort by defense counsel to challenge the admissibility of the statement would have been futile, and counsel is not ineffective for failing to make a futile motion. *People v Snider*, 239 Mich App 393, 425; 608 NW2d 502 (2000).

## B. REJECTION OF PLEA AGREEMENT

Diepenhorst next argues that the trial court erred when it rejected his acceptance of a plea offer as untimely where the jury had already announced that it had reached a verdict on several of the charges. We review for an abuse of discretion a trial court's decision to accept or reject a plea agreement. *People v Plumaj*, 284 Mich App 645, 648; 773 NW2d 763 (2009). However, to the extent that Diepenhorst argues that the trial court lacked the discretion to reject his acceptance of the plea offer, this issue is unpreserved because Diepenhorst did not raise this argument below. *Metamora Water Serv, Inc*, 276 Mich App at 382. Therefore, review is limited to plain error affecting his substantial rights. *Carines*, 460 Mich at 763-764.

By the time the prosecutor mentioned the plea offer, the jury had already advised the court, and the parties had been informed, that the jury had reached a verdict on 9 of the 12 charges concerning Diepenhorst. And, defendant stated he would accept the plea just prior to the trial court stating it was too late. Under these circumstances, we cannot conclude that the trial court abused its discretion by rejecting Diepenhorst's belated decision to accept the plea offer.

See *People v Grove*, 455 Mich 439, 469-470; 566 NW2d 547 (1997).[4] Although Diepenhorst suggests that the trial court lacked the discretion to reject "a plea as charged," the plea offer did not encompass all of the charges against Diepenhorst. It only contemplated a plea to a single count of carjacking and felony-firearm.

In addition, the proposed plea offer involved a prosecutorial sentence agreement. If a plea agreement provides for "a sentence to a specified term or within a specified range or a prosecutorial sentence recommendation," a trial court may reject the agreement, accept the agreement, take the plea under advisement, or accept the agreement after consideration of the presentence report. MCR 6.302(C)(3). Without an appropriate objection and further factual development, the trial court was not called upon to determine whether it would have accepted or rejected the sentence agreement. See *People v Killebrew*, 416 Mich 189, 208; 330 NW2d 834 (1982). Thus, Diepenhorst cannot show that, even if the trial court had allowed him to accept the plea offer, that it would have accepted the sentence agreement. Therefore, Diepenhorst has failed to show that he is entitled to relief.

## C. SENTENCING ERROR

Diepenhorst argues, and plaintiff concedes, that, at a minimum, a *Crosby* remand in accordance with *Lockridge* is appropriate because judicial fact-finding was necessary to place Diepenhorst in the cell of the sentencing grid under which he was sentenced. We conclude, however, that resentencing is appropriate because the same errors in the trial court's scoring of OVs 6 and 9, which require resentencing for defendants Lepper and Bozeman, also apply to Diepenhorst and affect his appropriate guidelines range. *Francisco*, 474 Mich at 89 n 8. Accordingly, for purposes of consistency, we also vacate Diepenhorst's sentences and remand for resentencing. As with the other codefendants, on remand, the trial court shall resentence Diepenhorst in conformity with *Lockridge*.

Defendants' convictions are affirmed, but we vacate each defendant's sentences and remand for resentencing. We do not retain jurisdiction.

/s/ Michael J. Kelly
/s/ Christopher M. Murray
/s/ Stephen L. Borrello

---

[4]We recognize that *People v Franklin*, 491 Mich 916; 813 NW2d 285 (2012), states that "*Grove* has been superseded by MCR 6.310(B)," but that subrule applies to a request to withdraw a plea, which was not done in this case.