*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

　　　　　Plaintiff-Appellee,

v

SIMONE BRANDON JONES,

　　　　　Defendant-Appellant.

UNPUBLISHED
March 12, 2025
3:08 PM

No. 368503
Wayne Circuit Court
LC No. 21-008063-01-FC

Before: GADOLA, C.J., and RICK and MARIANI, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial convictions of second-degree murder, MCL 750.317; assault with intent to murder (AWIM), MCL 750.83; felon in possession of a firearm (felon-in-possession), MCL 750.224f; witness interference, MCL 750.122; and three counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The trial court sentenced defendant to serve prison terms of 35 to 60 years for the second-degree murder conviction; 10 to 20 years for the AWIM conviction; 1 to 5 years for the felon-in-possession conviction; 3 to 5 years for the witness-intimidation conviction; and three terms of two years each for his felony-firearm convictions. The felony-firearm sentences were to be served concurrently with each other but consecutively to the other sentences. We affirm.

## I. FACTUAL BACKGROUND

This case arose from the shootings of Kristopher Wilson and Martell Alvin on June 21, 2021. While visiting Alvin at his home, Wilson received a phone call from defendant, who pulled up to the house as the passenger in a vehicle not long after. Alvin testified that Wilson walked on the sidewalk in front of neighboring property, was met by defendant, and the two engaged in conversation. According to Alvin, he approached the two men and engaged in a cordial conversation with them. After the conversation ended, Alvin and Wilson turned away to walk back to Alvin's house. Alvin testified that at that point, defendant began shooting at them. Alvin was struck in the arm and fled to the backyard, while Wilson collapsed in the front yard. Wilson died at the scene.

Data from Wilson's cellphone indicated that defendant and Wilson had been communicating before the shooting occurred. While he was in the hospital, Alvin, who did not know defendant, tentatively identified defendant in a photographic lineup. Approximately two weeks later, Alvin was shown a corporeal lineup, in which he identified defendant as the shooter. After a four-day trial, defendant was convicted and sentenced as earlier described. This appeal followed.

## II. ANALYSIS

### A. IDENTIFICATION

Defendant argues that the trial court erred by denying his motion to suppress evidence that Alvin identified him as the shooter in a pretrial lineup. We disagree.

This Court reviews a trial court's decision regarding identification evidence for clear error. *People v Hornsby*, 251 Mich App 462, 466; 650 NW2d 700 (2002). "Clear error exists when the reviewing court is left with a definite and firm conviction that a mistake was made." *Id*.

"Identity is an element of every offense." *People v Yost*, 278 Mich App 341, 356; 749 NW2d 753 (2008). A defendant's due-process rights are violated by the use of an "unduly suggestive" identification procedure. *People v Kurylczyk*, 443 Mich 289, 302; 505 NW2d 528 (1993). A procedure used in corporeal or photographic identification is unduly suggestive in violation of due-process guarantees when it produces "a substantial likelihood of misidentification." *People v Gray*, 457 Mich 107, 111; 577 NW2d 92 (1998); *People v McDade*, 301 Mich App 343, 357; 836 NW2d 266 (2013). Factors that a court should consider to determine the likelihood of misidentification include

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. [*Kurylczyk*, 443 Mich at 306 (quotation marks and citation omitted).]

Defendant bears the burden of demonstrating that a procedure used in a lineup was impermissibly suggestive. *People v McElhaney*, 215 Mich App 269, 286; 545 NW2d 18 (1996). "[T]he totality of the circumstances" is examined in determining whether a corporeal lineup procedure was unduly suggestive. *Kurylczyk*, 443 Mich at 311-312.

At an evidentiary hearing on the motion to suppress, Alvin testified that Wilson walked away from the porch while talking on his phone, and met in front of the neighboring house with a man, later identified as defendant, who pulled up to the house in a truck. Alvin agreed that he had not yet met defendant, but stated that he got "a good look" at him because defendant "walked right past" him and it was light outside. Alvin continued that he approached and was a part of the conversation for up to five minutes. He stated that defendant was wearing a sleeveless white T-shirt, a hat, and black sweatpants. Alvin testified that as he and Wilson were walking away, Alvin turned to see defendant begin shooting at them, hitting Alvin in the arm and killing Wilson.

Alvin further testified that while he was at the hospital, he spoke to the police and provided a description of defendant, including that he had a tattoo on his shoulder. The next day, Alvin was shown a photographic array. Alvin testified that he felt no pressure to select anyone, or to look at, or for, a particular feature. He selected defendant, after initially selecting no one, with "50 percent" confidence, on the basis of facial features in the photograph. Alvin continued that he was later asked to attend a live lineup at the police station, during which he selected defendant as the shooter with a "hundred" percent confidence. Alvin stated that his selection was based on defendant's face and body, and noted that he was wearing different clothes than Alvin recalled him wearing when the shooting occurred.

At the evidentiary hearing, Detective Jon Metiva testified that he administered the photographic lineup. Detective Metiva corroborated Alvin's testimony that Alvin was only "50-50 sure" of his identification of defendant during the photographic lineup. Detective Metiva stated that the police told Alvin that some of the pictures might be old, and that hair may have changed, and therefore to focus on facial features. Detective Metiva continued that he also conducted the in-person lineup for Alvin, who immediately identified defendant. Detective Metiva explained that Alvin was not told that he had to pick someone, or that there was an actual suspect in the lineup. Detective Metiva added that he informed Alvin that defendant was a suspect after Alvin identified him in the live lineup. Defendant was the only individual who appeared in both lineups.

Criminal defense attorney Brian Berry testified that he observed the live lineup, and that Alvin identified defendant, "within seconds," as the individual who "shot me and [Wilson]." Berry believed that defendant was the only lineup participant wearing a white shirt, and that he was shorter than the other subjects.

The trial court denied defendant's motion to suppress the identification. The court reasoned that any comments made by the police to Alvin, and the lack of a double-blind procedure, did not, under the totality of circumstances, render the photographic lineup excessively suggestive. The trial court also reasoned that the minor differences in the height of the subjects and defendant's clothes were not suggestive of his identification in the live lineup.

There is a substantial likelihood of misidentification in a lineup when differences between the participants " 'are apparent to the witness and substantially distinguish defendant from the other participants in the lineup[,]' " such that those differences provide the basis for identification, rather than actual recognition of the defendant. *People v Henry (After Remand)*, 305 Mich App 127, 161; 854 NW2d 114 (2014), quoting *Kurylczyk*, 443 Mich at 312. However, a lineup is not unduly suggestive simply when a "defendant's appearance was substantially similar to that of the other participants." *McDade*, 301 Mich App at 358. In this case, defendant argues that the lineup procedure overall was unduly suggestive because Alvin was asked to select a suspect out of a photographic lineup and a corporeal lineup within days of each other, in which defendant was the only person who appeared in both lineups.

Regarding the successive identifications, the trial court stated that the in-person lineup was necessary because Alvin's uncertain identification from the photo array was insufficient to prosecute the case. Defendant cites *Simmons v United States*, 390 US 377, 382; 88 S Ct 967; 19 L Ed 2d 1247 (1968), in which the United States Supreme Court considered the identification of the defendant when five employees of a bank who had witnessed a robbery identified the defendant

-3-

after being shown "a number of snapshots" in which the defendant appeared with various other people. At "later dates, some of these witnesses were again interviewed by the FBI and shown indeterminate numbers of pictures" from which they again identified the defendant. *Id.* At trial, the "Government did not introduce any of the photographs, but relied upon in-court identification by the five eyewitnesses, each of whom swore that [the defendant] was one of the robbers." *Id.* The Court acknowledged that "the identification procedure employed may have in some respects fallen short of ideal," but rejected defendant's claim that it violated his right to due process. *Id.* at 385-386.

Defendant does not argue that the identification procedure used in this case was more unduly suggestive than that used and upheld in *Simmons*. Instead, he relies on the Court's observation in *Simmons* that the danger of misidentification from a photographic lineup may be increased when the police show "the pictures of several persons among which the photograph of a single [suspect] recurs or is in some way emphasized." *Simmons*, 390 US at 383. However, unlike in *Simmons*, where the witnesses were initially shown a series of photographs that all included the defendant, there is no evidence that defendant's photograph here recurred more than once in the photographic lineup or was in any way emphasized over the other photographs. *Simmons* likewise does not support the argument that conducting a live lineup approximately two weeks after the photographic lineup, as was the case here, is per se unduly suggestive. For these reasons, *Simmons* does not support defendant's argument that Alvin's identification was induced by an unduly suggestive procedure.

Given the totality of the circumstances of Alvin's identifications, the procedure for identifying defendant in the live lineup two weeks after the identification in a photographic lineup was not unduly suggestive. Two different modalities were used. The first was photographs, which were apparently not current, and resulted in an only tentative identification of defendant as the attacker. The live lineup featured defendant's entire body and most recent appearance, from which Alvin readily identified him. Thus, Alvin was presented with different versions of defendant based on those different modalities, the first of which did not necessarily suggest the second. Indeed, Alvin was shown a completely novel presentation of defendant in the live lineup, given that the presentation did not call for focusing narrowly on the subject's face and offered a view of defendant's current appearance.

Further, in the event that pretrial identification evidence would itself be inadmissible at trial because of an unduly suggestive lineup, an in-court identification of the defendant by the same witness may be permitted where "an independent basis for in-court identification can be established that is untainted by the suggestive pretrial procedure." *Kurylczyk*, 443 Mich at 303. Here, because the trial court found that the identification procedures were not unduly suggestive, it did not undertake this analysis. While it may have been helpful had the trial court undertaken this step, it was not necessary. When "there was no impropriety in [the] pretrial identifications of defendant," establishing an independent basis for an in-court identification is not necessary. *McElhaney*, 215 Mich App at 288. Nonetheless, we conclude that Alvin would have been able to establish an independent basis for the in-court identification of defendant as the person who shot him and Wilson.

Although Alvin had never met defendant before the incident in question, on that occasion Alvin participated in an estimated five-minute conversation with defendant at close range, after

-4-

seeing defendant walk in front of him, in clear, sun-lit conditions, immediately before defendant shot him. While he was in the hospital because of the gunshot wounds, Alvin identified defendant from a photo array. Granted, Alvin was not completely certain of this identification. However, approximately two weeks later, Alvin definitively identified defendant in the live lineup. There was no argument that Alvin's description of defendant to the police was inaccurate. Accordingly, the trial court did not clearly err by denying defendant's motion to suppress identification testimony.

## B. OTHER-ACTS EVIDENCE

Defendant next argues that certain evidence, including evidence that he fled from the police and images of him possessing a gun, should have been excluded at trial. We disagree.

Whether evidence was properly admitted is reviewed for an abuse of discretion. *People v McGhee*, 268 Mich App 600, 636; 709 NW2d 595(2005). The trial court abuses its discretion when it chooses an outcome that falls outside the range of reasonable and principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).

Evidence of prior bad acts or crimes by a defendant must be excluded, except as allowed by MRE 404(b), to avoid the danger of a conviction based on a defendant's mere history of misconduct. *People v Starr*, 457 Mich 490, 495; 577 NW2d 673 (1998). MRE 404(b)(1) provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

This list is not exhaustive. *People v Sabin (After Remand)*, 463 Mich 43, 56; 614 NW2d 888 (2000). Further, evidence is not subject to analysis under MRE 404(b) only because it discloses a bad act, as bad acts can be independently relevant as substantive evidence. *People v Houston*, 261 Mich App 463, 468-469; 683 NW2d 192 (2004).

In this case, the prosecution moved to admit evidence that on the day defendant was identified as the shooter in an in-person lineup, defendant fled from the police, who were attempting to detain him at the time. Police testimony and body camera footage established that defendant rapidly drove off when the police initiated a traffic stop, then fled on foot and resisted arrest when the police pursued him to a residence. The prosecution additionally moved to admit images from defendant's mobile phone, dating from November 2020 and January 2021, of defendant "possessing a semiautomatic pistol consistent with the murder weapon." The trial court granted the motion, and that evidence was presented to the jury.

Generally, to be admissible under MRE 404(b), other-acts acts evidence (1) must be offered for a proper purpose, (2) must be relevant, and (3) must not have a probative value substantially outweighed by its potential for unfair prejudice. *People v Knox*, 469 Mich 502, 509; 674 NW2d

366 (2004), citing *People v VanderVliet*, 444 Mich 52, 74-75; 508 NW2d 114 (1993). A proper purpose is one other than establishing the defendant's propensity to commit the crime. *People v Johnigan*, 265 Mich App 463, 465; 696 NW2d 724 (2005). Here, evidence of defendant's attempt to evade capture was admitted for the proper purpose of demonstrating his consciousness of guilt after the shootings, rather than as improper character evidence. Likewise, the cell phone images of defendant with a semiautomatic handgun similar to the one used in the shootings were admitted for the proper purpose of proving his identity, knowledge, preparation, and possibly a lack of mistake in unlawfully possessing a handgun, rather than as improper character evidence.

The evidence was also relevant. Evidence is relevant if it has " 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' " *Wayne Co v State Tax Comm*, 261 Mich App 174, 196; 682 NW2d 100 (2004), quoting MRE 401. "Under this broad definition," evidence that is useful in shedding light on any material point is admissible. *People v Aldrich*, 246 Mich App 101, 114; 631 NW2d 67 (2001). Here, evidence of defendant's flight was relevant to show that defendant acted as if he understood himself to be culpable for the crime. See *McGhee*, 268 Mich App at 613. Additionally, defendant's flight was relevant to demonstrate his willingness to attempt to interfere in the prosecution of his crimes, considering that he was also tried for witness intimidation. Further, depictions of defendant in possession of a handgun similar to the one that was used in the shootings was relevant to demonstrate that he had access to such a gun, and chose to possess it despite his ineligibility to legally possess a firearm.

However, even relevant evidence offered for a proper purpose may be excluded "if 'its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.' " *People v Watkins*, 491 Mich 450, 477, 481; 818 NW2d 296 (2012), quoting MRE 403. Unfair prejudice occurs when there is a tendency for the evidence "to be given undue or preemptive weight" by the jury, or when it "would be inequitable to allow use of such evidence." *Taylor v Mobley*, 279 Mich App 309, 315; 760 NW2d 234 (2008). Evidence that is unfairly prejudicial goes beyond the merits of the case to inject issues broader than the defendant's guilt or innocence, such as "bias, sympathy, anger, or shock." *McGhee*, 268 Mich App at 614.

Defendant argues that evidence of his flight was minimally probative because the incident occurred 15 days after the shooting. However, as stated, the flight occurred on the day that defendant was identified as the shooter in a police lineup. Evidence of the flight and defendant's possession of a handgun had value in terms of identifying him as the perpetrator of the charged crime, and was not so outrageous as to evoke shock, bias, anger, or sympathy, or to be given undue weight by the jury. Accordingly, the trial court did not abuse its discretion by granting plaintiff's motion to admit the challenged evidence.

## C. JOINDER

Defendant next argues that that the charge of witness intimidation should not have been joined with the other charges. We disagree.

This Court generally reviews the determination regarding whether criminal charges were related de novo as a question of law. *People v Gaines*, 306 Mich App 289, 304; 856 NW2d 222 (2014). However, to preserve an issue for appeal, a party must raise it in the trial court. *People v Pipes*, 475 Mich 267, 277; 715 NW2d 290 (2006). In the district court, defendant challenged the court's decision to bind him over on the witness intimidation charge. However, he never filed a motion to sever and did not otherwise argue that the witness intimidation charge was improperly joined with the rest of his charges. Accordingly, the issue is unpreserved, and our review is for plain error affecting defendant's substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). To avoid forfeiture under the plain-error standard, the defendant must show that (1) an error occurred, (2) the error was plain, i.e., clear or obvious, and (3) the plain error prejudiced substantial rights, i.e., the error affected the outcome of the proceedings. *Id*. at 763. "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (quotation marks, citation, and brackets omitted).

The court rules authorize a trial court to "join offenses charged in two or more informations or indictments against a single defendant" when "appropriate to promote fairness to the parties and a fair determination of the defendant's guilt or innocence of each offense." MCR 6.120(B).[1] Joinder is permitted where "the offenses are related." MCR 6.120(B)(1).

In this case, the witness intimidation charge was based on phone calls that defendant allegedly made from jail in an attempt to have his family members discourage Alvin from testifying. Defendant argues that joinder of his witness intimidation charge at the preliminary examination was not appropriate because the charge was not related to the shooting of Alvin and Wilson. However, defendant's entire argument on this point is based on the incorrect assertion that joinder actually occurred.

Joinder is a procedural tool used to combine multiple legal issues, parties, or claims into a single proceeding, in order to promote efficiency and fairness in the judicial process. See MCR 6.120; *People v Williams*, 483 Mich 226, 232-234; 769 NW2d 605 (2009). Here, the district court did not join two informations or indictments, but instead permitted the prosecution to amend the information to add the witness intimidation charge. The charging document may not be amended when doing so infringes a defendant's right "to be fairly apprised of the charge against him." *People v Newson*, 173 Mich App 160, 164; 433 NW2d 386 (1988). However, MCL 767.76 allows for the amendment of the information at any time to correct "any defect, imperfection or omission in form or substance or of any variance with the evidence," and MCR 6.112(H) more

---

[1] MCR 6.120(B) begins as follows:

> On its own initiative, the motion of a party, or the stipulation of all parties, except as provided in subrule (C), the court may join offenses charged in two or more informations or indictments against a single defendant, or sever offenses charged in a single information or indictment against a single defendant, when appropriate to promote fairness to the parties and a fair determination of the defendant's guilt or innocence of each offense.

broadly provides that a trial court may allow an amendment of the information at any time unless amendment "would unfairly surprise or prejudice the defendant." Once the circuit court has jurisdiction over a case, " 'the only legal obstacle to amending the information . . . is whether the amendment would unduly prejudice the defendant because of unfair surprise, inadequate notice, or insufficient opportunity to defend.' " *People v Unger*, 278 Mich App 210, 221; 749 NW2d 272 (2008), quoting *People v Goecke*, 457 Mich 442, 462; 579 NW2d 868 (1998). These factors relate to a defendant's right to a fair opportunity to defend the charges brought against him or her. *People v Hunt*, 442 Mich 359, 364; 501 NW2d 151 (1993).

In this case, defendant makes no argument that amending the information at the preliminary examination to add a charge of witness intimidation impeded his right to defend against the charge. Nor is there any suggestion that amending the information at the preliminary examination resulted in unfair surprise, inadequate notice, or an insufficient opportunity to defend. Therefore, defendant's argument as to joinder fails, and we conclude that the amendment of the information was proper.

## IV. PROPORTIONALITY

Defendant also argues that his sentence for second-degree murder was disproportionate. We disagree.

Whether a sentence violated the principles of reasonableness under the proportionality test is reviewed for an abuse of discretion. See *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990). An abuse of sentencing discretion occurs where the sentence imposed does not reasonably reflect the seriousness of the circumstances surrounding the offense and the offender. *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017), citing *Milbourn*, 435 Mich at 636.

Defendant argues that his sentence was unreasonable because it was disproportionate and contends that the trial court did not adequately justify the sentence. The sentencing guidelines range for defendant's conviction of second-degree murder, including the fourth habitual-offender enhancement, was 270 to 900 months. The trial court imposed a sentence of 35 to 60 years (420 to 720 months) for that conviction. The sentence was therefore within the guidelines range, and there is a rebuttable presumption that it was proportionate. *People v Posey*, 512 Mich 317, 359; 1 NW3d 101 (2023). It is defendant's burden to demonstrate otherwise. *Id*.

The trial court explained the sentence as follows:

> The Court does believe that this sentence is proportionate to the particular facts of this case. The Court heard testimony that [defendant] was actually communicating with the deceased in this case via telephone. Arranged the meeting. Once he was at that location, the deceased, Mr. Wilson, was speaking with [defendant] on the street. This . . . occurred in broad daylight. . . . Mr. Wilson called Mr. Martell Alvin off of the porch to come down and speak with [defendant] as well. Once the three were . . . finished communicating, Mr. Alvin and Mr. Wilson turned to walk away, and [defendant] opened fire and Mr. Wilson succumbed to . . . the shots that he received. He was shot seven times. Several of those shots were actually in the back, in broad daylight on the street.

The trial court also stated that it considered information from the presentence investigation report (PSIR), the parties' respective sentencing memoranda, and "the statements that have been made here . . . in the court on the record." The PSIR listed "eight prior felony convictions, one misdemeanor convictions [sic] as an adult and a juvenile record that consists of three adjudications." It further noted that defendant had "served probation terms, jail, prison and fine[s]."

The reasonableness of a sentence is determined by evaluating whether the sentence " 'violate[d] the principle of proportionality, which require[s] sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender.' " *Steanhouse*, 500 Mich at 474, quoting *Milbourn*, 435 Mich at 636. This Court recited several factors bearing on the proportionality of a sentence:

> (1) the seriousness of the offense, (2) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation, and (3) factors that were inadequately considered by the guidelines in a particular case. [*People v Steanhouse*, 313 Mich App 1, 46; 880 NW2d 297 (2015) (citations omitted).]

A trial court should also consider " 'the nature of the offense and the background of the offender.' " *Id.*, quoting *Milbourn*, 435 Mich at 651.

Here, the trial court's reasoning included that defendant manipulated his victims into meeting him, and after the meeting shot Wilson in the back as Wilson walked away. We agree that the evidence that defendant shot seven times at apparently defenseless victims, while their backs were turned, indicated a brazen attack on a public sidewalk in daylight. The trial court therefore referenced the outrageous nature of the attack, exploiting the victims' relationship with Wilson, firing multiple shots at victims who were not able to resist, and doing so at a time and place where the surrounding public could have been endangered.

Defendant nevertheless argues that the sentence was disproportionate because at a pretrial conference, the prosecuting attorney recited a plea offer according to which defendant would plead guilty to second-degree murder and felony-firearm, with the expectation of consecutive sentences of 2 years plus 14 to 30 years. Defendant asserts that the trial court's 35-year minimum sentence was not reasonably related to the 14-year minimum sentence that he was offered, and that the court effectively punished him for asserting his right to be tried by a jury. Defendant is correct that a trial court may not penalize a defendant who elects not to take a plea deal by imposing a harsher sentence based on that decision. *People v Brown*, 294 Mich App 377, 389; 811 NW2d 531 (2011). "However, it is not per se unconstitutional for a defendant to receive a higher sentence following a jury trial than he would have received had he pleaded guilty." *Id*. Rather, that is simply the risk a defendant takes in not accepting a plea deal. *Id*. Here, there was no indication that the trial court considered defendant's decision to go to trial or penalized him for declining to take a plea deal while making its sentencing decision.

Defendant has not successfully rebutted the presumption that his guidelines sentence was proportionate. The sentence, which ultimately fell below the middle of his sentencing guidelines range, was entirely reasonable. The court properly considered the factors mentioned in *Steanhouse*, 313 Mich App at 46, such as the seriousness of the offense, defendant's lack of progress in remaining compliant with minimal standards of lawful conduct, and his decision to end a life and endanger the lives of others. The court also established by reference to matters of record that its sentence was " 'proportionate to the seriousness of the circumstances surrounding the offense and the offender.' " *Steanhouse*, 500 Mich at 474, quoting *Milbourn*, 435 Mich at 636. Accordingly, defendant has not demonstrated that his challenged sentence was disproportionate to the circumstances of the offense and offender. He is not entitled to resentencing.

Affirmed.

/s/ Michael F. Gadola
/s/ Michelle M. Rick
/s/ Philip P. Mariani